1  Robin E. Weideman, State Bar No. 197595
   CARLTON DiSANTE & FREUDENBERGER LLP
2  8950 Cal Center Drive
   Suite 160
3  Sacramento, California 95826
   Telephone:  (916) 361-0991
4  Facsimile:  (916) 361-1480
   E-Mail:  rweideman@cdflaborlaw.com
5
   Attorneys for Defendants
6  TRAVELERS INDEMNITY COMPANY and YVONNE
   GARRISON
7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                          OAKLAND DIVISION

12  EVA DENES,                        )  Case No. C 07 4811 CW
                                      )
13             Plaintiff,             )  **NOTICE OF MOTION AND MOTION**
          v.                          )  **TO COMPEL ARBITRATION AND TO**
14                                    )  **STAY PROCEEDINGS; POINTS AND**
    TRAVELERS INDEMNITY COMPANY and   )  **AUTHORITIES**
15  YVONNE GARRISON,                  )
                                      )  **Hearing Date:  December 20, 2007**
16             Defendants.            )  **Time:            2:00 p.m.**
                                      )
17                                    )  **Courtroom 2, Fourth Floor**
    ──────────────────────────────────)  **Hon. Claudia Wilken**
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3  I.     INTRODUCTION ..................................................................................... 1

4  II.    FACTS .................................................................................................... 1

5  III.   ARGUMENT ........................................................................................... 6

6         A.    Arbitration Agreements Are Strongly Favored And Broadly
               Construed. ..................................................................................... 6
7
8         B.    Plaintiff Agreed to Arbitrate the Types of Claims Set Forth in Her
               Complaint ...................................................................................... 7

9         C.    The AAA Forum, as Well as Travelers Arbitration Policy, Provide
               the Requisite Procedural Safeguards for Arbitrating Plaintiff's
10             Claims. .......................................................................................... 9

11             1.    Neutral arbitrator. .............................................................. 10

12             2.    No limitation of remedies. ................................................. 10

13             3.    Adequate discovery. ........................................................... 11

14             4.    A written decision. ............................................................. 11

15             5.    No additional costs to the employee unique to arbitration. ......... 12

16        D.    The Arbitration Agreement Plaintiff Signed Is Not Unconscionable. .......... 12

17             1.    The Arbitration Agreement Is Not Procedurally
                     Unconscionable. ................................................................ 12
18
19             2.    The Arbitration Agreement Is Not Substantively
                     Unconscionable. ................................................................ 13

20             3.    This Action Must Be Stayed Pending Completion of the
                     Arbitration. ........................................................................ 14
21
22  IV.   CONCLUSION ...................................................................................... 15

23

24

25

26

27

28

275132.1

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

<u>24 Hour Fitness, Inc. v. Superior Court</u>
    66 Cal.App.4th 1199 (1998) ................................................................ 12, 13, 14

<u>Armendariz v. Foundation Health Psychcare Services, Inc.</u>
    24 Cal.4th 83 (2000) ........................................................ 9, 10, 11, 12, 13

<u>Asmus v. Pacific Bell</u>
    23 Cal.4th 1 (2000) ...................................................................... 7, 9

<u>Caley v. Gulfstream Aerospace Corp.</u>
    428 F.3d 1359 (11th Cir. 2005) ...................................................... 7, 9

<u>Circuit City Stores, Inc. v. Adams</u>
    279 F.3d 889 (9th Cir. 2002) ......................................................... 7

<u>Craig v. Brown & Root, Inc.</u>
    84 Cal.App.4th 416 (2000) ........................................................ 7, 8, 9

<u>Durkin v. CIGNA Property & Cas. Corp.</u>
    942 F.Supp. 481 (D. Kan. 1996) .................................................. 7, 9

<u>Genesco, Inc. v. Kakiuchi & Co.</u>
    815 F.2d 840 (2d Cir. 1987) ........................................................ 7

<u>Giuliano III v. Inland Empire Personnel, Inc.</u>
    149 Cal.App.4th 1276 (2007) ....................................................... 7

<u>Lagatree v. Luce, Forward, Hamilton & Scripps LLP</u>
    74 Cal.App.4th 1105 (1999) ...................................................... 7, 12, 13

<u>May v. Higbee Co.,</u>
    372 F.3d 757 (5th Cir. 2004) ..................................................... 7, 9

<u>Medical Dev. Corp. v. Indus. Molding Corp.</u>
    479 F.2d 345 (10th Cir. 1973) .................................................... 7

<u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.</u>
    460 U.S. 1 (1983) .................................................................... 6

<u>Nghiem v. NEC Electronic, Inc.</u>
    25 F.3d 1437 (9th Cir. 1994) ...................................................... 7

<u>Southland Corp. v. Keating</u>
    465 U.S. 1 (1984) .................................................................... 6

<u>Stirlen v. Supercuts, Inc.</u>
    51 Cal.App.4th 1519, 1533 (1977) ............................................... 12

TABLE OF AUTHORITIES

275132.1

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

Tinder v. Pinkerton Sec.,
    305 F.3d 728 (7th Cir. 2002) .................................................................. 7, 9

Valero Ref., Inc. v. M/T Lauberhorn
    813 F.2d 60, 62 (5th Cir. 1987) ................................................................. 7

Vianna v. Doctors' Mgmt. Co.
    27 Cal.App.4th 1186, 1189 (1994) .............................................................. 6

**Statutes**

9 U.S.C. § 1 ................................................................................................. 6

9 U.S.C. § 2 ................................................................................................. 6

9 U.S.C. § 3 ............................................................................................... 14

Cal. Code Civ. Proc. § 1281.2 ...................................................................... 6

Cal. Code Civ. Proc. § 1281.4 .................................................................... 15

**Rules**

American Arbiration Association Employment Rules
    Rule 9 ...................................................................................................... 11

American Arbiration Association Employment Rules
    Rule 12 .................................................................................................... 10

American Arbitration Association Employment Rules
    Rule 39(c) ............................................................................................... 11

American Arbitration Association Employment Rules
    Rule 39(d) ............................................................................................... 11

TABLE OF AUTHORITIES

275132.1

**NOTICE OF MOTION**

TO PLAINTIFF EVA DENES AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2007 at 2:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court, Defendants Travelers Indemnity Company and Yvonne Garrison will, and hereby do, move for an order compelling arbitration of each and every one of Plaintiff Eva Denes' claims alleged in the Complaint. Defendants will, and hereby do, concurrently move the Court for an order staying this action in its entirety until arbitrability is determined, and if granted, until after the arbitration is completed. This motion is brought pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. sections 1 et seq., and is made on the ground that Plaintiff agreed to execute all claims relating to her employment, including those alleged in this case against all Defendants.

These motions are based upon this Notice, the supporting Memorandum of Points and Authorities below, and the Declaration of Diane Bengston filed and served herewith.

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Eva Denes is a former employee of Defendant Travelers Indemnity Company ("Travelers"). Defendant Garrison was (and still is) a supervisory employee of Travelers. As a condition of continued employment with Travelers, Plaintiff agreed to arbitrate any and all employment-related disputes. This agreement clearly and unambiguously requires final and binding arbitration of all of the claims asserted in Plaintiff's Complaint. Controlling federal and California authorities mandate that Plaintiff's agreement to arbitrate is a valid and enforceable contract that requires the Court to compel arbitration of the present dispute. Because an order compelling arbitration is mandatory, an automatic stay of this action pending a determination of arbitrability and completion of the arbitration, is also required as a matter of law.

**II.    FACTS**

Plaintiff was employed by Travelers from 1974 to 2005. Plaintiff was a Senior Technical Specialist, responsible for the handling of complicated claims typically involved in litigation with exposure in excess of $75,000. (Complaint, para. 9.)

1

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No. C 07 4811 CW

1    In 1994, Travelers implemented a policy requiring binding arbitration of employment

2    disputes as the final step to the company's internal dispute resolution procedure.  By letter dated

3    July 22, 1994 from Travelers Vice President of Human Resources, all employees were notified

4    through internal company mail of the adoption of the binding arbitration policy and that this

5    policy was a condition of continued employment with Travelers.  (Exhibit A to Bengston Decl.)

6    Specifically, all employees, including Plaintiff, were notified as follows:

7    "Travelers is now also one of the first insurance companies to provide employees neutral,

8    binding arbitration as a **condition of employment**.…[I]n the unusual situation when the internal

9    procedure does not fully resolve an employment related dispute, the Company and you agree that

10    . . . any remaining issues will be submitted to binding arbitration by an independent arbitrator

11    affiliated with the American Arbitration Association. . . .**Arbitration is an essential element of**

12    **your employment relationship and a condition of employment**."

13    (Exhibit A to Bengston Decl.)

14    The Travelers arbitration policy was thereafter distributed to all employees through

15    internal company mail as part of the employee handbook issued in July 1994.  (The 1994 policy is

16    attached as Exhibit B to the Bengston Decl.)   The policy expressly states that it "**applies to all**

17    **persons employed by Travelers on the date of its adoption** . . . and all employees joining

18    Travelers after that date." (Exhibit B, p. 79, emphasis added.)  The policy makes clear that

19    arbitration is required for all employment-related disputes:

20    > **The Policy makes arbitration the required, and exclusive,**
> **forum for the resolution of all employment disputes** that may

21    > arise (and which are not resolved by the internal dispute resolution
> procedure), including claims, demands or actions under Title VII

22    > of the Civil Rights Act of 1964 . . . the Age Discrimination in
> Employment Act . . . the Employee Retirement Income Security

23    > Act of 1974 . . . and any other federal, state or local statute,

24    > regulation or common law doctrine, regarding employment
> discrimination, conditions of employment or termination of

25    > employment.

26

27    (Exhibit B, p. 79, emphasis added.)

28    / / /

2

275132.1

1        In April 1996, Travelers issued a revised employee handbook, again containing Travelers

2    Arbitration Policy.  The handbook was distributed to all employees by internal company mail.  By

3    way of a cover letter accompanying the handbook, employees were specifically reminded that the

4    handbook included an Arbitration Policy and were advised to review the Arbitration Policy

5    carefully and to call their human resource representative with any questions.  (Exhibit C to

6    Bengston Decl.)

7        Like the 1994 Arbitration Policy, the updated 1996 Arbitration Policy clearly states that it

8    "applies to all persons employed by Travelers Group on the date of its adoption . . . and all

9    employees joining Travelers Group after that date." (Exhibit C, sections A & B.)  The Policy also

10   again makes clear that arbitration is the "required, and exclusive, forum for the resolution of all

11   employment disputes." (Exhibit C, section B.)

12       In addition, under the "Principles of Employment" section of the 1996 handbook

13   employees are notified that as a condition of employment they are required to observe Travelers

14   policies, including Travelers Group Employment Arbitration Policy.  Employees are specifically

15   advised that **by agreeing to employment with Travelers, they are "agree[ing] to follow**

16   **[Travelers] dispute resolution/arbitration procedures for employment disputes."** (Exhibit D

17   to Bengston Decl., pp.8-10.)  Specifically, "in the unusual situation when [Travelers internal

18   dispute resolution procedure] does not fully resolve an employment related dispute, and the

19   dispute is based upon legally protected rights, you and we agree . . . to submit the dispute . . . to

20   binding arbitration. . . ." (Exhibit D, p.9.)  Employees are further advised, "<u>Again, it is your</u>

21   <u>responsibility to read and understand the dispute resolution/arbitration procedures.  If you have</u>

22   <u>any questions, now or in the future, please ask</u>." (Exhibit D, p.9, emphasis in original.)

23       In 1998, Travelers again issued an updated employee handbook and Arbitration Policy,

24   which was distributed to all employees through interoffice mail.  As with prior handbooks, the

25   1998 handbook was accompanied by a letter to employees specifically calling their attention to

26   the Arbitration  Policy in the handbook.  (Exhibit E to Bengston Decl.)  The Principles of

27   Employment and Arbitration Policy were maintained in substantially similar form as the 1996

28   policies and again made clear that any and all disputes between an employee or former employee

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

1    and Travelers and/or its affiliates or employees were required to be decided by binding arbitration

2    before the American Arbitration Association in accordance with the AAA Employment Dispute

3    Resolution Rules, as modified and expanded upon by Travelers.  (Exhibit E to Bengston Decl.)

4    The Arbitration Policy also clearly notified employees that continued employment after

5    notification of amendments or modifications to the policy constitutes acceptance of the terms.

6    (Exhibit E, p. 77-78.)

7            Travelers issued further revised handbooks to all employees in 2001, 2002, 2003, 2004

8    and 2005, each time reminding employees of Travelers policy requiring binding arbitration of

9    employment related disputes.  (Exhibits F, G, H, and I to Bengston Decl.)  Travelers Arbitration

10   Policy was maintained in substantially similar form throughout this time, and through the present

11   time.  (Bengston Decl.)  Notably, the 2002, 2003 and 2004 handbooks each specifically alerted

12   employees at the beginning of the handbook that they were required, as a condition of

13   employment, to agree to submit any employment-related dispute to binding arbitration:

14   "**IMPORTANT**.  THIS HANDBOOK CONTAINS A PROVISION WHICH REQUIRES YOU

15   TO SUBMIT EMPLOYMENT RELATED DISPUTES TO BINDING ARBITRATION.

16   PLEASE READ IT CAREFULLY.  NO OTHER PROVISION IN THIS HANDBOOK IS

17   INTENDED TO CONSTITUTE A WAIVER, NOR SHOULD BE CONSTRUED TO

18   CONSTITUTE A WAIVER, OF THE COMPANY'S RIGHTS TO COMPEL ARBITRATION

19   OF EMPLOYMENT RELATED DISPUTES."  (Exhibits G, H, I to Bengston Decl., emphasis in

20   original.)  Each of these handbooks further states, "**Arbitration is an essential element of your**

21   **employment relationship and is a condition of your employment**."  (Exhibits G, H, I to

22   Bengston Decl., emphasis added.)

23          In 2004, Travelers merged with The St. Paul Companies.  Following the merger, the

24   Company's Senior Vice President of Human Resources sent an email to all employees regarding

25   various employment policies, including the Internal Dispute Resolution Procedure and

26   Employment Arbitration Policy.  The e-mail specifically notified employees, including Eva

27   Denes, that:

28   / / /

275132.1

1   [T]he following Travelers policies will remain in effect for legacy
2  Travelers employees through December 31, 2004 . . . Travelers
  Internal Dispute Resolution Procedure, Travelers Employment
3  Arbitration Policy. . . .

4   It is your responsibility to read and understand all of the Company
  policies. **Your agreement to abide by all of these policies is an**
5  **express condition of your continued employment with the St.**
  **Paul Travelers Companies.**
6

7 (Exhibit J to Bengston Decl., emphasis added.)

8   Travelers continued its Internal Dispute Resolution Procedure and Arbitration Policy in

9 2005. The policies were published and distributed to all employees in April 2005. Travelers also

10 posted these policies on the company Intranet so that the policies would be easily accessible to all

11 employees. The 2005 Arbitration Policy continued in substantially identical form the Arbitration

12 Policy that had been in place for ten years, again making clear that "**arbitration [is] the required**

13 **and exclusive forum** for the resolution of all employment-related disputes . . . that may arise

14 between an employee or former employee and the Company or its current and former parents,

15 subsidiaries and affiliates and its and their current and former officers, directors, employees and

16 agents (and that are not resolved by the internal dispute resolution procedure). . . ." (Exhibit K to

17 Bengston Decl., emphasis added).

18   Plaintiff Eva Denes was clearly aware of her obligations under Travelers Internal Dispute

19 Resolution Procedure and Arbitration Policy as had been communicated to her repeatedly from

20 1994 through 2005. Indeed, according to Plaintiff, she affirmatively availed herself of Travelers

21 Internal Dispute Resolution Procedure (the dispute resolution procedure preceding binding

22 arbitration) by lodging a discrimination complaint with Travelers Human Resources Department

23 shortly before she was terminated. (Complaint, para. 13.)

24   Notwithstanding Plaintiff's knowledge and understanding of her obligations under

25 Travelers policies, she filed the instant lawsuit for employment discrimination in state court, in

26 violation of Travelers Arbitration Policy. Plaintiff alleges causes of action for age discrimination

27 in violation of the Fair Employment and Housing Act (FEHA), failure to prevent discrimination

28 in violation of FEHA, breach of employment contract, breach of the covenant of good faith and

5    MOTION TO COMPEL ARBITRATION AND
        STAY PROCEEDINGS
275132.1       Case No.  C 07 4811 CW

1   fair dealing, and violation of Business and Professions Code section 17200.  All of these claims

2   indisputably fall within the scope of claims required to be arbitrated under Travelers Arbitration

3   Policy.

### III.     ARGUMENT

**A.     Arbitration Agreements Are Strongly Favored And Broadly Construed.**

6       This action is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 et seq.,

7   which provides, in relevant part, that "[a] written provision in . . . a contract evidencing a

8   transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

9   contract or transaction *shall be valid, irrevocable, and enforceable*."  9 U.S.C. § 2 (emphasis

10  added).  By enacting the FAA, "Congress declared a national policy favoring arbitration and

11  withdrew the power of the states to require a judicial forum for the resolution of claims which the

12  contracting parties agreed to resolve by arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10

13  (1984).  The FAA embodies a "liberal federal policy favoring arbitration agreements" and

14  establishes, as a matter of federal law, that "any doubts concerning the scope of arbitrable issues

15  should be resolved in favor of arbitration."  Moses H. Cone Memorial Hosp. v. Mercury

16  Construction Corp., 460 U.S. 1, 24-25 (1983).

17      California law is fully in accord with these federal authorities in requiring arbitration

18  pursuant to the private agreements of parties.  The California Arbitration Act ("CAA") provides

19  that a court shall order the parties to arbitrate a controversy if it determines that an agreement to

20  arbitrate exists.   Cal. Civ. Proc. Code § 1281.2.  California law also mandates that any doubts

21  concerning the arbitrability of disputes must be resolved in favor of arbitration:

> Because California has a strong public policy in favor of
> arbitration, arbitration agreements should be liberally interpreted,
> and arbitration should be ordered unless the agreement clearly
> does not apply to the dispute in question.  Doubts as to whether an
> arbitration clause applies to a particular dispute are to be resolved
> in favor of sending the parties to arbitration.

26  Vianna v. Doctors' Mgmt. Co., 27 Cal.App.4th 1186, 1189 (1994) (internal citations and

27  punctuation omitted).

28  / / /

6

1    **B.    Plaintiff Agreed to Arbitrate the Types of Claims Set Forth in Her Complaint.**

2    The right to arbitration depends upon contract, and courts look to state law contract

3    principles to determine whether an agreement to arbitrate exists.  Circuit City Stores, Inc. v.

4    Adams, 279 F.3d 889, 892 (9th Cir. 2002); Giuliano III v. Inland Empire Personnel, Inc., 149

5    Cal.App.4th 1276, 1284 (2007).  However, in applying general principles of contract interpretation

6    to an arbitration agreement within the scope of the FAA, due regard must be given to the federal

7    policy favoring arbitration and any ambiguity regarding the scope of arbitration must be resolved

8    in favor of arbitration.  Lagatree v. Luce, Forward, Hamilton & Scripps LLP, 74 Cal.App.4th

9    1105, 1118-19 (1999).

10    It is also well-established that under the FAA an arbitration agreement does not need to be

11    signed in order for an enforceable agreement to be found.  Nghiem v. NEC Electronic, Inc., 25

12    F.3d 1437, 1439 (9th Cir. 1994) (enforcing unsigned agreement to arbitrate); Caley v. Gulfstream

13    Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir. 2005) (finding agreement to arbitrate where

14    employer distributed written arbitration policy to employees by mail and by posting it on

15    company intranet with cover letter to employees explaining that the policy was a condition of

16    continued employment); Tinder v. Pinkerton Sec., 305 F.3d 728 (7th Cir. 2002) (enforcing

17    arbitration agreement adopted by employer even though employee never signed it, finding that

18    continued employment manifested employee's acceptance of policy); May v. Higbee Co., 372

19    F.3d 757, 764 (5th Cir. 2004) (same); Durkin v. CIGNA Property & Cas. Corp., 942 F.Supp. 481

20    (D. Kan. 1996) (same); Medical Dev. Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir.

21    1973) (FAA does not require that a party sign the writing containing the arbitration provision);

22    Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987) (FAA does not require a

23    writing signed by the parties); Valero Ref., Inc. v. M/T Lauberhorn, 813 F.2d 60, 62 (5th Cir.

24    1987) ("It is established that a party may be bound by an agreement to arbitrate even in the

25    absence of his signature.")

26    Furthermore, under California contract law, continued employment constitutes

27    acceptance of employment terms proposed by the employer.  Asmus v. Pacific Bell, 23 Cal.4th 1,

28    14-15 (2000); Craig v. Brown & Root, Inc., 84 Cal.App.4th 416 (2000) (acceptance of arbitration

1  agreement established by continued employment).  In Craig, the court held that an employee's

2  acceptance of an arbitration agreement proposed by her employer was implied-in-fact, based on

3  the employee's continued employment following notice of the employer's adoption of a binding

4  arbitration policy.  Craig, supra, 84 Cal.App.4th at 420-22.  Specifically, several years into the

5  employee's employment, the employer adopted a dispute resolution program to resolve all

6  employment-related disputes.  The employer sent a memorandum to all employees explaining the

7  dispute resolution program, including binding arbitration as the final step of dispute resolution.

8  The memorandum advised employees to "Please take the time to read the material.  IT APPLIES

9  TO YOU.  It will govern all future legal disputes between you and the Company that are related

10 in any way to your employment."  Id. at 419.  The plaintiff continued working for the employer

11 for about four years following the employer's adoption of the dispute resolution program.  The

12 plaintiff's employment was then terminated.  Plaintiff filed suit against her employer alleging

13 sexual harassment and gender discrimination.  The employer moved to compel arbitration, which

14 was granted.  The employee later appealed, claiming that there was no evidence that she had

15 agreed to arbitrate her claims.  Id. at 419-20.

16      The appellate court disagreed and upheld the trial court's decision.  In doing so, the court

17 explained that the evidence revealed the employer had mailed information about its dispute

18 resolution program to the plaintiff at least two separate times during her employment, entitling the

19 court to infer that plaintiff had received the materials notwithstanding plaintiff's denial of receipt.

20 The court further held that plaintiff's continued employment following receipt of the dispute

21 resolution policy constituted acceptance of the terms of the policy, including the requirement for

22 binding arbitration.  Id. at 421-22.

23      The facts of the present case are even stronger than in Craig in terms of clearly

24 establishing that Plaintiff agreed to arbitrate any employment-related disputes with Travelers.  As

25 explained in detail in Section II above, on at least ten (10) separate occasions between 1994 and

26 2005, Plaintiff was notified in writing that Travelers had a mandatory, binding Arbitration Policy

27 and that by continuing her employment with Travelers, she was thereby agreeing to be bound by

28 this Policy.  (Bengston Decl. and Exhibits A through K thereto.)  Plaintiff was specifically

8

1   notified that the Policy applied to **all** employment-related disputes between herself and Travelers

2   (including statutory discrimination and related claims), and that both she and Travelers were

3   bound to arbitrate any such disputes that were not otherwise resolved by Travelers internal

4   dispute resolution procedure (the required step preceding arbitration).  (Bengston Decl. and

5   Exhibits A through K thereto.)  Plaintiff continued her employment with Travelers for

6   approximately eleven (11) years after first being notified of Travelers implementation of a

7   binding arbitration policy as a condition of employment.  By continuing her employment

8   throughout this time, Plaintiff agreed to the terms of Travelers Arbitration Policy and is bound by

9   them.  Craig, supra, 84 Cal.App.4th at 420-22; see also Asmus, supra, 23 Cal.4th at 14-15; Caley,

10  supra, 428 F.3d at 1369; Tinder, supra, 305 F.3d at 728; May, supra, 372 F.3d at 764; Durkin,

11  supra, 942 F.Supp. at 488.

12         There also can be no dispute that all of Plaintiff's claims in this case fall within the scope

13  of Travelers Arbitration Policy, which expressly states that it applies to "all employment-related

14  disputes . . . that may arise between an employee or former employee and the Company or its

15  current and former parents, subsidiaries and affiliates and its and their current and former officers,

16  directors, employees and agents. . .including without limitation claims, demands or actions under

17  Title VII . . . the Age Discrimination in Employment Act . . . and any other federal, state or local

18  statute, regulation or common law doctrine regarding employment discrimination, conditions of

19  employment or termination of employment."  (Exhibits B through K to Bengston Decl.)

20      **C.**     **The AAA Forum, as Well as Travelers Arbitration Policy, Provide the**
             **Requisite Procedural Safeguards for Arbitrating Plaintiff's Claims.**
21

22         In Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83 (2000), the

23  California Supreme Court confirmed that "under both federal and California law, arbitration

24  agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

25  equity for the revocation of any contract."  Id. at 98 (footnote omitted).  With respect to agreements

26  to arbitrate certain statutory claims, however, the Court held the arbitration agreement must meet

27  five basic requirements:  (1) a neutral arbitrator, (2) no limitation of remedies, (3) adequate

28  / / /

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

275132.1

1  discovery, (4) a written decision, and (5) no additional costs to the employee unique to arbitration.

2  Id.

3       As explained below, Travelers Arbitration Policy provides special procedures specifically

4  designed to ensure that statutory employment discrimination cases are fairly arbitrated as

5  mandated by Armendariz.  Similarly, the AAA has special Employment Arbitration Rules and

6  Mediation Procedures ("AAA Employment Rules") devoted to the fair arbitration of employment

7  disputes.

8       **1.**    **Neutral arbitrator.**

9       The first requirement mandated by Armendariz for claims such as Plaintiff's to be arbitrable

10  is a neutral arbitrator.  Armendariz, 24 Cal.4th at 102.  The AAA has rules governing the

11  requirements for arbitrators of employment disputes.  The arbitrators must be experienced in the

12  field of employment law and have no personal or financial interest in the results of the arbitration

13  or any relation to the parties or their counsel.  AAA Employment Rule 12.[1]  Thus, the AAA

14  Employment Rules provide for not only a neutral arbitrator, but one who has the requisite

15  qualifications for hearing employment discrimination/harassment disputes.

16       Travelers Arbitration Policy also sets forth a specific selection procedure aimed at ensuring

17  the selection of a neutral arbitrator.  The Policy specifically provides that AAA shall issue to both

18  parties an identical list of possible arbitrators from its Employment Dispute Resolution Roster.

19  Each party then has ten days to strike any two objectionable arbitrators and to list in order of

20  preference the remaining acceptable arbitrators.  AAA then selects one neutral arbitrator in order of

21  the reconciled preferences specified by the parties.  (Exhibit K to Bengston Decl., pp. 3-4.)

22       **2.**    **No limitation of remedies.**

23       To be enforceable, an agreement to arbitrate employment law claims cannot limit statutory

24  remedies such as punitive damages and attorneys' fees.  Armendariz, 24 Cal.4th at 103.  There is

25  no such limitation under AAA rules or Travelers Arbitration Policy.  In fact, the AAA

26  Employment Rules provide, "The arbitrator may grant any remedy or relief that would have been

27  ---

[1]      For the Court's convenience, copies of the AAA Employment Rules cited herein are

28  attached hereto as Exhibit A.

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

275132.1

1   available to the parties had the matter been heard in court including awards of attorney's fees and

2   costs, in accordance with applicable law." AAA Employment Rule 39(d). Travelers Arbitration

3   Policy provides a similar provision. (Exhibit K to Bengston Decl., p. 7.)

### 3.   Adequate discovery.

5   According to Armendariz and its progeny, an employment law claimant is "at least

6   entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to

7   essential documents and witnesses." Armendariz, 24 Cal.4th at 106. The AAA Employment

8   Rules and Travelers Arbitration Policy provide for such discovery. The AAA Employment Rules

9   state, "The arbitrator shall have the authority to order such discovery, by way of deposition,

10  interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full

11  and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."

12  AAA Employment Rule 9.

13  Travelers Arbitration Policy further provides, "Each party shall be entitled to propound

14  and serve upon the other party one set of interrogatories . . . and one set of requests for the

15  production of documents . . . .Upon the request of a party, the arbitrator may order further

16  discovery consistent with the Rules of the AAA and the expedited nature of arbitration." (Exhibit

17  K to Bengston Decl., p. 5.)

### 4.   A written decision.

19  Armendariz also mandates "a written arbitration decision that will reveal, however briefly,

20  the essential findings and conclusions on which the award is based." Armendariz, 24 Cal.4th at

21  107. The AAA Employment Rules provide for such a decision: "The award shall be in writing

22  and shall be signed by a majority of the arbitrators and shall provide the reasons for the award

23  unless the parties agree otherwise." AAA Employment Rule 39(c).

24  Travelers Arbitration Policy also makes provision for a written award signed by the

25  arbitrator, setting forth in summary form the reasons for the arbitrator's decision. (Exhibit K to

26  Bengston Decl., p. 7.)

27  / / /

28  / / /

275132.1

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

1      **5.      No additional costs to the employee unique to arbitration.**

2          Under <u>Armendariz</u>, a mandatory arbitration agreement cannot require the employee to

3  bear "any type of expense that the employee would not be required to bear if he or she was free to

4  bring the action in court." <u>Armendariz</u>, 24 Cal.4th at 110. Here, Travelers Arbitration Policy

5  specifically provides that Travelers will pay any filing fees required by the AAA, as well as

6  hearing fees, arbitrator fees, hearing room expenses, and all other similar ordinary expenses

7  associated with the arbitration. (Exhibit K to Bengston Decl., p. 8.) As a result, Plaintiff will not

8  be required to pay any additional fees as the result of arbitrating her claims rather than pursuing

9  them in court.

10          In sum, the AAA rules and Travelers Arbitration Policy provide the procedural safeguards

11  required by <u>Armendariz</u> for arbitrating Plaintiff's claims.

12      **D.      The Arbitration Agreement Plaintiff Signed Is Not Unconscionable.**

13          If an arbitration agreement satisfies the minimum requirements set forth in <u>Armendariz</u>, it

14  must be enforced unless the agreement is determined to be unconscionable. <u>Armendariz</u>, 24

15  Cal.4th at 114. "[U]nconscionability has both a procedural and a substantive element. . . . The

16  procedural element focuses on the unequal bargaining positions and hidden terms common in the

17  context of adhesion contracts. . . . While courts have defined the substantive element in various

18  ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or

19  that impose harsh or oppressive terms. . . ." <u>Lagatree</u>, <u>supra</u>, 74 Cal.App.4th at 1125 (<u>quoting</u> <u>24</u>

20  <u>Hour Fitness, Inc. v. Superior Court</u>, 66 Cal.App.4th 1199 (1998)). Procedural and substantive

21  unconscionability *must both be present* in order for a court to refuse to enforce a contract or

22  clause under the doctrine of unconscionability. <u>Armendariz</u>, 24 Cal.4th at 114. The agreement at

23  issue in this case cannot be found unconscionable.

24      **1.      The Arbitration Agreement Is Not Procedurally Unconscionable.**

25          Procedurally unconscionable arbitration agreements are characterized by oppression and

26  surprise resulting from the stronger party's "hiding" the disputed terms. <u>Stirlen v. Supercuts, Inc.</u>,

27  51 Cal.App.4th 1519, 1533 (1977). With respect to the Arbitration Policy Plaintiff agreed to, it

28  cannot be said that the arbitration provision was somehow hidden from Plaintiff. Plaintiff was

1  provided with the Policy at least 10 separate times between 1994 and 2005 and was specifically

2  advised to read and familiarize herself with the Policy and to inquire if she had any questions

3  about the Policy.  (Bengston Decl. and Exhibits A through K thereto.)  There was nothing hidden

4  about Travelers Arbitration Policy.  As such, the arbitration agreement is not procedurally

5  unconscionable.

6          **2.        The Arbitration Agreement Is Not Substantively Unconscionable.**

7          Even if the arbitration agreement Plaintiff executed was procedurally unconscionable,

8  Plaintiff still would need to demonstrate that it was substantively unconscionable as well to avoid

9  arbitrating her claims.  24 Hour Fitness, 66 Cal.App.4th at 1213 ("[e]ven assuming the

10  circumstances here amount to procedural unconscionability, [plaintiff] must still show the

11  existence of a factual issue as to substantive unconscionability").  This she cannot do.

12          Substantive unconscionability focuses on the effect of the arbitration agreement and

13  whether its terms are unduly harsh, oppressive, and/or so one-sided as to shock the conscience.

14  Lagatree, supra, 74 Cal.App.4th at 1125.  In Armendariz, the Supreme Court held that a "modicum

15  of bilaterality" is required to prevent an arbitration agreement from being substantively

16  unconscionable.  Armendariz, 24 Cal.4th at 117.  The Armendariz Court found the agreement

17  before it substantively unconscionable because "it requires the arbitration of employee -- but not

18  employer -- claims . . .  The unconscionable one-sidedness of the arbitration agreement is

19  compounded in this case by the fact that it does not permit the full recovery of damages for

20  employees, while placing no such restrictions on the employer."  Id. at 120-21.  Similarly, in

21  Stirlen, the court found the arbitration agreement substantively unconscionable because it

22  relegated all employee claims to arbitration while allowing the employer to enforce its rights in

23  court; restricted the discovery available to employees, but not the employer; and unilaterally

24  deprived employees, but not the employer, of significant statutory and common law remedies.

25  Stirlen, 51 Cal.App.4th at 1536-39.

26          In contrast, Travelers Arbitration Policy requires that both Plaintiff *and* Travelers arbitrate

27  any employment disputes arising between them, regardless of whether the claims are initiated by

28  Plaintiff or Travelers.  As a result, unlike the agreements in Armendariz and Stirlen, here all

13

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

1  parties are equally bound to arbitrate all disputes. In addition, all parties are required to follow

2  the same rules for the arbitration—those of the AAA supplemented by Travelers Arbitration

3  Policy. As a result, all parties are entitled to engage in the same amount and types of discovery.

4  Further, Plaintiff's remedies are equivalent to those available to her in court, and she is not

5  required to bear any costs beyond those she would normally bear by proceeding with her claims

6  in court. (Exhibit K to Bengston Decl.) Thus, the arbitration agreement is not substantively

7  unconscionable. See 24 Hour Fitness, 66 Cal.App.4th at 1213 ("Here, in contrast, the arbitration

8  clause applies equally to employer and employee; allows both parties substantially the same array

9  of discovery procedures available in civil actions; and does not create an imbalance in remedies

10 potentially available to either side. In short, [plaintiff] has failed to show the existence of any . . .

11 substantive unconscionability.").

12      In sum, because Plaintiff cannot establish that the Arbitration Policy she and Travelers

13 agreed to follow is both procedurally *and* substantively unconscionable, the agreement is fully

14 enforceable and Plaintiff should be ordered to arbitrate her claims.

15      **3.    This Action Must Be Stayed Pending Completion of the Arbitration.**

16      Because Travelers and Garrison are entitled to an order compelling arbitration, it

17 necessarily follows that this action must be stayed pursuant to section 3 of the FAA and section

18 1281.4 of the CAA pending the completion of arbitration. Section 3 of the FAA provides in

19 relevant part:

20          If any suit or proceeding be brought . . . upon any issue referable
            to arbitration under an agreement in writing for such arbitration,
21          the court in which such suit is pending, upon being satisfied that
            the issue involved in such suit or proceeding is referable to
22          arbitration under such an agreement, *shall* on application of one of
            the parties stay the trial of the action until such arbitration has
23          been had in accordance with the terms of the agreement, providing
            the applicant for the stay is not in default in proceeding with such
24          arbitration.

25 9 U.S.C.A. § 3 (emphasis added).

26 / / /

27 / / /

28 / / /

14

MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS
Case No.  C 07 4811 CW

1    Section 1281.4 of the CAA provides in relevant part:

2       If a court of competent jurisdiction, whether in this State or not,
        has ordered arbitration of a controversy which is an issue involved
3       in an action or proceeding pending before a court of this State, the
        court in which such action or proceeding is pending **shall**, upon
4       motion of a party to such action or proceeding, stay the action or
        proceeding until an arbitration is had in accordance with the order
5       to arbitrate or until such earlier time as the court specifies.

6    Cal. Code Civ. Proc. § 1281.4 (emphasis added).  Accordingly, this action should be stayed in its

7    entirety pending completion of arbitration.

8                                **IV.    CONCLUSION**

9        Based on the foregoing, Defendants Travelers and Yvonne Garrison request that the Court

10   grant their motion to compel arbitration and issue an order staying this matter pending completion

11   of arbitration.

12   Dated:  November 9, 2007          CARLTON DiSANTE & FREUDENBERGER LLP

13

14                                 By:  _____

15                                          Robin E. Weideman
                                   Attorneys for Defendants TRAVELERS INDEMNITY
16                                 COMPANY and YVONNE GARRISON

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Search ▶
Checkout ▶

**AAA** *ONLINE* **Assistant** ▶

| ABOUT US | DISPUTE RESOLUTION SERVICES | FILE A CASE | EDUCATION | NEUTRALS | CONTACT US |

HOME

PRINT VERSION

## Employment Arbitration Rules and Mediation PROCEDURES

Amended and Effective July 1, 2006

To view the summary of changes, click here.

Table of Contents

Introduction
Role of the American Arbitration Association
Legal Basis of Employment ADR
The Fairness Issue: The Due Process Protocol
AAA's Employment ADR Rules
AAA's Policy on Employment ADR
Notification
Costs of Employment Arbitration
Designing an ADR Program
Alternative Dispute Resolution Options
Types of Disputes Covered


Employment Arbitration Rules and Mediation Procedures
1. Applicable Rules of Arbitration
2. Notification
3. AAA as Administrator of the Arbitration
4. Initiation of Arbitration
5. Changes of Claim
6. Jurisdiction
7. Administrative and Mediation Conferences
8. Arbitration Management Conference
9. Discovery
10. Fixing of Locale
11. Date, Time, and Place of Hearing
12. Number, Qualifications, and Appointment of Neutral Arbitrators
13. Party Appointed Arbitrators
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
15. Disclosure
16. Disqualification of Arbitrator
17. Communication with Arbitrator
18. Vacancies
19. Representation

20. Stenographic Record

21. Interpreters

22. Attendance at Hearings

23. Confidentiality

24. Postponements

25. Oaths

26. Majority Decision

27. Dispositive Motions

28. Order of Proceedings

29. Arbitration in the Absence of a Party or Representative

30. Evidence

31. Inspection

32. Interim Measures

33. Closing of Hearing

34. Reopening of Hearing

35. Waiver of Oral Hearing

36. Waiver of Objection/Lack of Compliance with These Rules

37. Extensions of Time

38. Serving of Notice

39. The Award

40. Modification of Award

41. Release of Documents for Judicial Proceedings

42. Applications to Court

43. Administrative Fees

44. Neutral Arbitrator's Compensation

45. Expenses

46. Deposits

47. Suspension for Non-Payment

48. Interpretation and Application of Rules


Costs of Arbitration (including AAA Administrative Fees)

For Disputes Arising Out of Employer-Promulgated Plans

Filing Fees

Hearing Fees

Postponement/Cancellation Fees

Hearing Room Rental

Abeyance Fees

Expenses


For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts


Filing Fees and Case Service Fees

Refund Schedule

Hearing Room Rental

Abeyance Fee

Expenses


For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")


Optional Rules for Emergency Measures of Protection

O-1. Applicability

O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

Employment Mediation Procedures
1. Agreement of Parties
2. Initiation of Mediation
3. Request for Mediation
4. Appointment of Mediator
5. Qualifications of Mediator
6. Vacancies
7. Representation
8. Date, Time, and Place of Mediation
9. Identification of Matters in Dispute
10. Authority of Mediator
11. Privacy
12. Confidentiality
13. No Stenographic Record
14. Termination of Mediation
15. Exclusion of Liability
16. Interpretation and Application of Rules
17. Expenses
Mediation Fee Schedule

Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes. These rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections, and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures,* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination -- in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act. The specific issue left open by Gilmer was decided 10 years later by the United States Supreme Court in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol,* which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The Due Process Protocol encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol.*

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures* ). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's *California Employment Dispute Resolution Rules,* which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol.* If the Association determines that a dispute resolution program on its face

substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol,* the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

»The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

»A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review, and internal mediation.

»The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

»Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

»Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures.*

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide,* which is available from the AAA's website, www.adr.org.

Alternative Dispute Resolution Options

Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

## »Pre-Dispute, Voluntary Final and Binding Arbitration

- The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

»Pre-Dispute, Mandatory Nonbinding Arbitration

- The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

»Pre-Dispute, Mandatory Final and Binding Arbitration

- The parties must arbitrate unresolved disputes and they are bound by the outcome.

»Post-Dispute, Voluntary Final and Binding Arbitration

- The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

Employment Arbitration

Rules and Mediation Procedures

1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

*The National Rules for the Resolution of Employment Disputes* have been re-named the *Employment Arbitration Rules and Mediation Procedures*. Any arbitration agreements providing for arbitration under its *National Rules for the Resolution of Employment Disputes* shall be administered pursuant to these *Employment Arbitration Rules and Mediation Procedures*.

2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

   i. notify the Association of its intention to do so and,
   ii. provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

   a. The parties may submit a joint request for arbitration.
   b. In the absence of a joint request for arbitration:
      i. The initiating party (hereinafter "Claimant[s]") shall:
         1. File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties;

a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.
2. Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").
3. Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

ii. The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

iii. The Respondent(s):
1. May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.
2. Simultaneously shall send a copy of any counterclaim to the Claimant.
3. Shall include with its filing the applicable filing fee provided for by these rules.

iv. The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

c. The form of any filing in these rules shall not be subject to technical pleading requirements.


5. Changes of Claim


Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.


6. Jurisdiction


a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.


7. Administrative and Mediation Conferences


Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no administrative fee for initiating a mediation under AAA Mediation Procedures for parties to a pending arbitration.


8. Arbitration Management Conference


As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation

i. the issues to be arbitrated;
ii. the date, time, place, and estimated duration of the hearing;
iii. the resolution of outstanding discovery issues and establishment of discovery parameters;
iv. the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;
v. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

   vi.   the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;
   vii.   the value of bifurcating the arbitration into a liability phase and damages phase;
   viii.   the need for a stenographic record;
   ix.   whether the parties will summarize their arguments orally or in writing;
   x.   the form of the award;
   xi.   any other issues relating to the subject or conduct of the arbitration;
   xii.   the allocation of attorney's fees and costs;
   xiii.   the specification of undisclosed claims;
   xiv.   the extent to which documentary evidence may be submitted at the hearing;
   xv.   the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;
   xvi.   any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

10. Fixing of Locale (the city, county, state, territory, and/or country of the arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

12. Number, Qualifications, and Appointment of Neutral Arbitrators

   a.   If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.
   b.   Qualifications
      i.   Neutral arbitrators serving under these rules shall be experienced in the field of employment law.
      ii.   Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.
      iii.   The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.
      iv.   The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.
   c.   If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
      i.   Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
      ii.   If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
      iii.   From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons

named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

### 13. Party Appointed Arbitrators

a.  If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.
b.  Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16 (a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.
c.  If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.
d.  If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

### 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

a.  If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.
b.  If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.
c.  If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

### 15. Disclosure

a.  Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.
b.  Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.
c.  In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

### 16. Disqualification of Arbitrator

a.  Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
    i.   partiality or lack of independence,
    ii.  inability or refusal to perform his or her duties with diligence and in good faith, and
    iii. any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.
b.  Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

### 17. Communication with Arbitrator

a.  No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.
b.  Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

18. Vacancies

    a.   If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

    b.   In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

    c.   In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcriptis agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently. The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall

make an oral or written report to the parties and afford them an opportunity to comment.

### 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

### 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within

the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

### 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

### 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

### 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

### 38. Serving of Notice

a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**39. The Award**

a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

d. The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

e. If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

f. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

g. The arbitrator's award shall be final and binding.

**40. Modification of Award**

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

**41. Release of Documents for Judicial Proceedings**

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

**42. Applications to Court**

a. No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b. Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

c. Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d. Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**43. Administrative Fees**

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 45-53).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at www.adr.org).

**44. Neutral Arbitrator's Compensation**

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

### 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

### 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

### 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

### 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

### Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

### For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $900 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $1,775 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

(iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

(iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

(v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be borne equally by the parties and are subject to reallocation by the arbitrator in the award.

(i) Filing Fees and Case Service Fees

An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24

hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|:---:|:---:|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.Fee Schedule for Claims in Excess of $10 MillionThe following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

Fee Schedulefor Claims in Excess of $10 Million

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|:---:|:---:|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

(ii) Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

»100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

»50% of the filing fee, in any case with filing fees in excess of $500, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing. Where the filing fee is $500, the refund will be $200.

»25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

(iii) Hearing Room Rental

The fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the AAA for availability and rates.

(iv) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(v) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

Optional Rules for Emergency Measures of Protection

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

Employment Mediation Procedures

1. Agreement of Parties

Whenever, by provision in an employment dispute resolution program, or by separate submission, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (hereinafter "AAA") or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

2. Initiation of Mediation

Any party to an employment dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the applicable administrative fee.

3. Request for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

4. Appointment of Mediator

Upon receipt of a request for mediation, the AAA shall send simultaneously to each party to the dispute an identical list of five (unless the AAA decides that a different number is appropriate) names of qualified mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement. If the parties are unable to agree upon an mediator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of a mediator to serve. If the parties fail to agree on any of the persons named, or if acceptable mediators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to appoint a qualified mediator to serve.

If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

## 5. Qualifications of Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

## 6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

## 7. Representation

Any party may be represented by a person of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## 8. Date, Time, and Place of Mediation

The mediator shall fix the date, time, and place of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

## 9. Identification of Matters in Dispute

At least 10 days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented. The mediator may require any party to supplement such information.

## 10. Authority of Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

## 11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## 12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

    a.   views expressed or suggestions made by another party with respect to a possible settlement of the dispute;
    b.   admissions made by another party in the course of the mediation proceedings;
    c.   proposals made or views expressed by the mediator; or
    d.   the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## 13. No Stenographic Record

There shall be no stenographic record of the mediation process.

## 14. Termination of Mediation

The mediation shall be terminated:

    a.   by the execution of a settlement agreement by the parties;
    b.   by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or
    c.   by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

## 15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

## 16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## 17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

## Mediation Fee Schedule

The nonrefundable case set-up fee is $325

per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpendable balance to the parties.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may

violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

| FILE A CASE | CONTACT US |

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED