1  Michael J. Meyer  (State Bar No. 242706)
   **LAW OFFICES OF MICHAEL J. MEYER**
2  1801 Clement Avenue, Suite 101
3  Alameda, California  94501
   Telephone (510) 931-5720
4  Facsimile (510) 337-1431
   Michael.Meyer@Meyer-Legal.com
5
6  Gordon M. Fauth, Jr. (State Bar No. 190280)
   **FAUTH LAW OFFICES**
7  1801 Clement Avenue, Suite 101
   Alameda, California  94501
8  Telephone (510) 238-9610
   Facsimile (510) 337-1431
9  gmf@classlitigation.com
10
11 Attorneys for Plaintiff Eva Denes

12                 **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                      **OAKLAND DIVISION**

15
   EVA DENES,                          Case No. C-07-04811 CW
16
            Plaintiff,                 **PLAINTIFF'S MEMORANDUM OF**
17                                     **POINTS AND AUTHORITIES IN**
      v.                               **OPPOSITION TO DEFENDANTS'**
18                                     **MOTION TO COMPEL ARBITRATION**
19 TRAVELERS INDEMNITY COMPANY, a
   Connecticut Corporation; YVONNE     Date:  January 10, 2008
20 GARRISON, an individual; and DOES 1 Time:  2:00pm
   through 50, inclusive,             Dept:  2, 4th Floor
21                                     Judge:  The Honorable Claudia Wilken
            Defendants
22

23

24

25

26

27

28
   PLAINTIFF'S MEMORANDUM IN              CASE NO. C-07-04811 CW
   OPPOSITION TO MOTION TO COMPEL
   ARBITRATION

# TABLE OF CONTENTS

**Page(s)**

COURT ACTION SOUGHT ................................................................................ 1

ISSUES TO BE DECIDED ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION .......... 2

    INTRODUCTION AND SUMMARY ................................................................ 2

    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

    ARGUMENT ............................................................................................. 5

    I.    TRAVELERS' "ARBITRATION POLICY" IS NOT ENFORCEABLE BECAUSE IT IS NEITHER A CONTRACT NOR WITHIN A CONTRACT ......................................................................................... 5

        A.    Arbitration Provisions Are Only Enforceable as Contractual Provisions; And Travelers' Purported Arbitration Provision Must Be Examined Under Ordinary Principles of California Contract Law ..................................... 5

        B.    Travelers is Precluded From Treating its Employee Handbook as a Contract, as Already Determined by the California Court of Appeals .............. 6

        C.    Travelers' Employee Handbook Does Not Create an Enforceable Agreement to Arbitrate. ...................................................................... 9

            1.    Travelers Has Failed To Provide Its Entire Handbook, And May Not Rely On The Selected Portions It Provides To Create A Contract. ....................................................................................... 9

            2.    What Is Known About The Language Of The Travelers Handbook Establishes That It Cannot Constitute An Arbitration Agreement .......... 10

            3.    Defendants Have Not Shown That Denes Accepted An Agreement To Arbitrate ............................................................................... 11

    II.    EVEN IF TRAVELERS HANDBOOK IS A CONTRACT (IT IS NOT) THE ARBITRATION PROVISION CANNOT BE ENFORCED BECAUSE IT IS UNCONSCIONABLE AND NOT SEVERABLE .................... 14

        A.    Plaintiff Seeks Vindication of Her Public Rights ........................................... 15

        B.    The Arbitration Provision is Procedurally Unconscionable ............................. 15

        C.    The Arbitration Provision is Substantively Unconscionable ........................... 16

1.    The Provision Imposes Unreasonable Forum Costs on Employees ......... 17

2.    Travelers Retained a Unilateral Right to Modify the Handbook.............. 18

3.    The Provision Impermissibly Limits Discovery ....................................... 18

4.    The Provision Fails to Provide the Required Mutuality ........................... 21

D.    Unconscionable Terms of the Arbitration Provision Cannot Be Severed Because Those Terms Permeate the Provision and Severance Would Require New Terms In Their Place................................................................... 23

1.    Multiple Unconscionable Elements Permeate The Arbitration Provision ................................................................................................. 24

2.    Severance Would Require the Court to Insert New Contract Language.................................................................................................. 24

3.    There Is No Ongoing Contractual Relationship to Conserve, and Plaintiff Will Not Receive Gain an Undeserved Benefit if the Court Invalidates the Entire Arbitration Provision ............................................ 25

III.   PLAINTIFF'S UNFAIR COMPETITION CLAIMS FOR INJUNCTIVE RELIEF ARE NOT ARBITRABLE AS A MATTER OF LAW ........................... 25

CONCLUSION.................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638 (2004). ...................................... 14, 16, 21, 24

Armendariz v. Found. Psychcare Services, Inc., 24 Cal.4th 83 (2000). ................................ passim

Asmus v. Pacific Bell, 23 Cal. 4th 1 (2000). ..................................................................... 13

Badie v. Bank of America, 67 Cal.App.4th 779 (1988)........................................................ 10

Broughton v. Cigna HealthPlans, 21 Cal.4th 1066 (1999). ................................................ 26

Circuit City Stores, Inc. v. Adams, 279 F.3d 889 (9th Cir. 2002). ...................................... 5

Coppernoll v. Bd. of Directors, 138 Cal.App.3d 915 (1983)................................................ 11

County of Marin v. Assessment Appeals Bd., 64 Cal.App.3d 319; Cal.Rptr. 349 (1976)...................... 9, 12

Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416 (2000)................................................... 13

Cruz v. PacifiCare Health Systems, Inc., 30 Cal.4th 303 (2003).......................................... 26

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995).......................................... 5, 14

Fitz v. NCR Corp., 118 Cal. App. 4th 702 (2004). ............................................................ passim

Graham v. Scissor-Tail Inc., 28 Cal.3d 807 (1981). ........................................................ 16

Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000). .............................................. 9

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003). ..................................... passim

Kinney v. United HealthCare Services, Inc., 70 Cal. App. 4th 1322 (Cal. App. 1999)...................... 15

Little v. Auto Stiegler, Inc., 29 Cal.4th 1064 (2003). ..................................................... 17

Mercuro v. Superior Court, 96 Cal. App. 4th 167 (2002)............................................... 16, 19, 22

Migra v.Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984). ....................................... 6

Mitchell v. American Fair Credit Assoc., 2002 Cal.App. LEXIS 4375........................................ 5

Mitri v. Arnel Mgmt. Co., __ Cal. App. ___ (Dec. 12, 2007). .............................................. 12

Moses H. Cohn Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983)................................... 5

O'Hare v. Municipal Resource Consultants, 107 Cal. App. 4th 267 (2003). ................................ 23

Par-Knight Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir. 1980)........................... 11

Prima Paint Corp v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967). ..................................... 5

Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394 (1996). .................................... 11

San Remo Hotel v. San Francisco City, 364 F.3d 1088 (9th Cir. 2004). ................................... 6

Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519 (1977). ............................................... 15, 22

Stolz v. Bank of America, 15 Cal.App.4th 217 (Cal. App. 4th 1993). ..................................... 6, 8

Three Valleys Municipal Water Dist., v. E.F. Hutton, 925 F.2d 1136 (9th Cir. 1991)................................. 9

Ting v. AT&T, 319 F.3d 1126 (9th. Cir. 2003). ...................................................................... 21

United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574 (1960). ................................. 5

1

## COURT ACTION SOUGHT

Plaintiff Eva Denes requests that the Court deny Defendants' motion to compel arbitration and stay proceedings. If the Court disagrees with Plaintiff's view that Travelers' arbitration provision is unenforceable as a matter of law, Ms. Denes asks that the Court defer ruling on arbitrability until she completes her discovery and supplements the record.

## ISSUES TO BE DECIDED

1.      Whether Defendants are precluded from arguing that the Travelers employment handbook imposes an agreement to arbitrate, given that this issue was already decided against Travelers by the California Court of Appeals.

2.      Whether Defendants have met their burden of proving  that Plaintiff Eva Denes agreed to arbitrate, given that:

●       Defendants have provided only selected excerpts of the employee handbook purportedly imposing arbitration;

●       The handbook expressly states no contract affecting working conditions is created;

●       Plaintiff never read or consented to the purported arbitration agreement; and

●       Defendants have provided only selected excerpts of documents and ambiguous evidence regarding provision of those documents to employees; and no discovery has taken place.

3.      Whether Travelers' Arbitration Policy is procedurally unconscionable, given that:

●       Travelers forced it upon employees with no opportunity to negotiate, to opt out, or to reject.

●       Plaintiff would have to have chosen between accepting the arbitration provision or forfeiting her employment of many decades.

4.      Whether Travelers' Arbitration Policy is substantively unconscionable, given that:

●       It imposes unreasonable arbitration costs on employees, which they would not have to pay if litigating in court.

●       Travelers retained for itself a unilateral right to modify or extinguish the arbitration policy.

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION TO COMPEL
ARBITRATION                                        1

CASE NO. C-07-04811 CW

● It severely restricts the discovery available to plaintiffs, which is particularly onerous when plaintiffs seek to vindicate statutory discrimination claims.

● The Policy specifically exempts the types of relief that would most likely be sought by Travelers, while requiring arbitration for the litany of claims that might be brought by employees.

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION

### INTRODUCTION AND SUMMARY

Defendants have not met their burden of showing that the Travelers employee handbook imposes an "Arbitration Policy" requiring Plaintiff Denes' claims to be referred to arbitration. In fact, Defendants already litigated this identical issue in another employment case—and lost. That adjudication, which was affirmed by the California Court of Appeals, precludes Travelers from litigating the issue again here. (*See* Declaration of Gordon M. Fauth, Jr. in Opposition to Motion to Compel Arbitration ("Fauth Decl."), Ex. A (unpublished 1998 opinion by the California Court of Appeals affirming decision in *Allenza v. The Travelers Indemnity Co., et al.*.)[1]

Defendants also fail to meet their burden because they have provided only selected excerpts of the employee handbook purportedly imposing arbitration, violating the rule that contracts must be considered in their entirety, not piecemeal. The handbook also fails to establish a contract because it expressly states that it creates no contract affecting working conditions—and arbitration is, by Travelers' own admission, a working condition. Defendants also fail to show, even assuming the employee handbook constitutes a contract to arbitrate, that Denes ever received or accepted this contract.

Even if the Court were to find that a contract to arbitrate had been formed between the parties, that contract necessarily takes the form of a contract of adhesion foisted upon employees by Travelers, and as such, it is procedurally unconscionable. Because there are multiple one-

---

[1] As a preliminary matter, Plaintiff believes this Court must hear Plaintiff's pending motion to remand for lack of jurisdiction, presently set for hearing on January 24, 2008, before it hears Defendants' motion to compel arbitration. *See Toumajian v. Frailey*, 135 F.3d 648, 658 (9th Cir. 1998) (district court should consider "threshold question of subject-matter jurisdiction" first). However, as the hearing date calendared for the motion to compel arbitration has not yet been moved, Plaintiff files this opposition, but expressly reserves the right later to file amended or supplemental papers as may be permitted by the rules and/or Court.

1    sided terms throughout that purported contract, it is also substantively unconscionable. These

2    terms cannot be extirpated from the purported contract without requiring the Court to insert new

3    provisions in their place, and even if they could be removed, that removal would not cleanse the

4    agreement of its overall illegality. Therefore, the Court should strike the arbitration provisions in

5    their entirety as unenforceable.

      For these and other reasons set forth herein, Defendants' motion should be denied.

6

7                          **FACTUAL AND PROCEDURAL BACKGROUND**

8        Plaintiff Denes was wrongfully terminated after she had faithfully worked for Travelers

9    for thirty-one years, most of the time at its offices in Walnut Creek. (Compl. ¶¶ 1, 9.) As

10   alleged in the complaint, Denes and at least five other over-50 Travelers employees at her office

11   were the victims of an unrelenting campaign to force older employees out. (*Id.* ¶¶ 10-12.)

12       On August 3, 2007, Denes filed her complaint in the Superior Court for the State of

13   California, County of Contra Costa, alleging age discrimination in violation of the California

14   Fair Employment and Housing Act ("FEHA"), Government Code §§ 12940 and 12941; failure to

15   prevent discrimination in violation of FEHA; breach of Denes' employment contract with

16   Travelers; breach of the covenant of good faith and fair dealing; and violations of California

17   Business and Professions Code sections 17200 *et seq.*, including unfair and fraudulent business

18   practices and violations of other California laws. (Compl. ¶¶ 24-56.)

19       Thereafter, Defendants removed the case to federal court; and have now moved to

20   compel arbitration. Plaintiff has filed a motion to remand the case to the California court from

21   which it was removed.

22       Discovery in the case has not yet commenced. In support of the motion to compel

23   arbitration, Defendants have presented selected excerpts from the Travelers employee handbook

24   which, they argue, imposes an "Arbitration Policy" on employees. Defendants have not

25   presented the entire handbook.

26       Travelers says the arbitration provision was inserted into its employee handbook in 1994,

27   requiring all employees to submit to arbitration as a condition of continued employment. (*See*

28

      PLAINTIFF'S MEMORANDUM IN                                    CASE NO. C-07-04811 CW
      OPPOSITION TO MOTION TO COMPEL
      ARBITRATION                           3

1   Motion to Compel Arbitration and To Stay Proceedings ("Travelers' Memo.") at 2.)  Travelers

2   states that the same arbitration policy, imposed through its employee handbook, remained in

3   place for the next ten years:  "The 2005 Arbitration Policy continued in substantially identical

4   form the Arbitration Policy that had been in place for ten years, again making clear that

5   'arbitration [is] the required and exclusive forum for the resolution of all employment-related

6   disputes . . . " (*Id.* At 5 (alteration in original).)

7          Travelers insists employees accepted its "Arbitration Policy" by not resigning their

8   positions.  Travelers says the handbook and accompany letters were distributed via Travelers'

9   "interoffice mail system" to Denes and all employees regularly.  (*See* Declaration of Diane

10  Bengston in Support of Defendants' Motion To Compel Arbitration and Stay Proceedings

11  ("Bengston Decl.").)  Travelers does not explain what this mail system is or how it works.

12         Plaintiff Denes does not recall ever reading the documents attached to the Bengston

13  declaration, and did not sign any agreement with respect to arbitration.  (*See* Declaration of Eva

14  Denes in Opposition to Defendants' Motion to Compel Arbitration ("Denes Decl.") ¶ 3.)

15         Most of the material information and documents are still in Travelers' possession.

16  However, Plaintiff's investigation has already uncovered evidence refuting Travelers' position.

17  Plaintiff's counsel have located another case in which Travelers tried and failed to enforce the

18  "arbitration policy" in its handbook.  Significantly, it involved an employee who, like Denes,

19  worked at Travelers' Walnut Creek office and filed a wrongful termination action in Contra

20  Costa County Superior Court.  (*See* Fauth Decl., Ex. A.)  In that case, the California Court of

21  Appeals affirmed the trial court's rejection of the same arguments in favor of enforcing the

22  "arbitration policy" in the employee handbook that Travelers makes here.

23

24

25

26

27

28

1

<u>**ARGUMENT**</u>

2

3

I.    <u>**TRAVELERS' "ARBITRATION POLICY" IS NOT ENFORCEABLE BECAUSE**</u>
      <u>**IT IS NEITHER A CONTRACT NOR WITHIN A CONTRACT**</u>

4

A.    <u>**Arbitration Provisions Are Only Enforceable as Contractual Provisions; And**</u>
      <u>**Travelers' Purported Arbitration Provision Must Be Examined Under**</u>
      <u>**Ordinary Principles of California Contract Law**</u>

5

6

7        Travelers mistakenly seizes on <u>dicta</u> from Justice Brennan's opinion in *Moses H. Cohn*

8  *Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), and misuses case law to argue that the

9  Federal Arbitration Act ("FAA") requires that all doubts must be resolved in favor of arbitration.

10 *Id*. at 24; Travelers' Memo. at 6-7.  However, there is nothing in the FAA to suggest a

11 predisposition in favor of arbitration.  As both federal and California law agree, the FAA simply

12 requires courts to enforce an arbitration agreement <u>when one exists</u>.  *See First Options of*

13 *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("arbitration is simply a matter of contract

14 between parties; it is a way to resolve disputes – but only those disputes – that the parties have

15 agreed to submit to arbitration"); *Mitchell v. American Fair Credit Assoc.*, 2002 Cal.App. LEXIS

16 4375 at 21 (accord).  Thus, as the Supreme Court has noted, the FAA makes arbitration

17 agreements "as enforceable as other contracts, <u>but not more so</u>."  *Prima Paint Corp v. Flood &*

18 *Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12 (emphasis added).

19       Accordingly, "It is a settled principle of law that 'arbitration' is a matter of contract.'"

20 *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir., 2003) (quoting *United*

21 *Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960).  Arbitration

22 agreements are subject to all defenses to enforcement that apply to contracts generally. *See Ingle*

23 at 1170; 9 U.S.C. § 2 (2002). In determining the validity of an arbitration agreement, federal

24 courts "should apply ordinary state-law principles that govern the formation of contracts." *First*

25 *Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  And the law that must be applied

26 is the law of the forum state, here California.  *See Ingle*, 328 F.3d at 1170; *Circuit City Stores,*

27 *Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

28       Under California law, Travelers' "arbitration policy" in its employee handbook does not

impose an agreement to arbitrate.

1

2

### B.    Travelers is Precluded From Treating its Employee Handbook as a Contract, as Already Determined by the California Court of Appeals

3

4       Because Travelers has already litigated—and lost—the argument that its employee

5   handbook constitutes and imposes an arbitration agreement, Travelers is barred from litigating

6   that issue again.  Issue preclusion "forecloses relitigation of factual or legal issues that have been

7   actually and necessarily decided in earlier litigation."  *San Remo Hotel v. San Francisco City*,

8   364 F.3d 1088, 1094 (9th Cir., 2004).  To determine the preclusive effect of a state court

9   judgment, federal courts apply the rules of the state that rendered the underlying judgment.

10  *Migra v.Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984).  Under California law,

11  there is collateral estoppel where:  (1) the issue presented is the same issue decided in a prior

12  case; (2) there was a final judgment on the merits; and (3) the party to be estopped was a party to

13  the prior adjudication.  *See Stolz v. Bank of America*, 15 Cal.App.4th 217, 222 (Cal. App. 4th

14  1993).  California courts apply issue preclusion to both facts and law.  *See San Remo Hotel* at

15  1096 n.3.

16       Travelers argues that in 1994 it implemented, through its employee handbook, a "policy"

17  requiring all employees to submit to arbitration as a condition of continued employment.

18  (Travelers' Memo. at 2.)  It states that the same arbitration policy, imposed through its employee

19  handbook, remained in place for the next ten years:  "The 2005 Arbitration Policy continued in

20  substantially identical form the Arbitration Policy that had been in place for ten years, again

21  making clear that 'arbitration [is] the required and exclusive forum for the resolution of all

22  employment-related disputes . . . " (*Id.* At 5 (alteration in original).)  Travelers concedes

23  employees did not sign or acknowledge the "policy," but argues that all its employees who chose

24  to continue their employment at Travelers, including Denes, necessarily accepted this arbitration

25  policy by not resigning their positions:  "Plaintiff Eva Denes was clearly aware of her obligations

26  under Travelers Internal Dispute Resolution Procedure and Arbitration Policy as had been

27  communicated to her repeatedly from 1994 through 2005."  (*Id.*)[2]

---

[2] One of Defendants' headings is "The Arbitration Agreement Plaintiff Signed Is Not Unconscionable," but that statement is not in any of the text of Defendants' argument and is apparently a typographical error.  Plaintiff did not sign any document agreeing to arbitrate.  (*See* Denes Decl.)

What Travelers does not tell the Court is that it has already litigated and lost on the issue of enforcing the purported arbitration agreement in its employee handbook. In particular, in *Allenza v. The Travelers Indemnity Co., et al.,* No. C96-04655, a case filed in 1997, Mr. Anthony Allenza, a wrongfully terminated employee who had worked in the same Walnut Creek office as Denes, brought suit against Travelers in California Superior Court in Contra Costa County. Travelers argued there, exactly as it does here, that its employee handbook imposed its purported "policy" to arbitrate disputes on all its employees: "The Policy 'makes arbitration the required and exclusive forum for the resolution of all employment disputes that may arise . . . " (Fauth Decl., Ex. B at 3 (Travelers memorandum in support of motion to compel in *Allenza*).)

In *Allenza,* Travelers made essentially the same factual and legal arguments in support of arbitration in *Allenza* that it makes now. (*See* Travelers' Memo.; Fauth Decl., Ex. B (Travelers' memorandum in *Allenza*).) The superior court heard and rejected Travelers' arguments: "Following briefing and oral argument, the trial court denied the petition, stating: 'I don't find that the defendant has established the existence of an agreement to arbitrate.'" (Fauth Decl., Ex. A at 3 (Court of Appeals ruling affirming trial court's decision))." As here, Travelers filed selected excerpts from its manual; but Plaintiff Allenza secured and filed the entire manual, which contains a passage stating:

> This handbook is provided for your information only. It should not be considered in any way as creating a contract or guarantee of employment nor should it be construed as creating any rights, contractual or otherwise, to continued employment benefits or working conditions between any employee and the Company."

(Fauth Decl., Ex. A at 5.)

Travelers argued that, nonetheless, the "arbitration policy itself states that it is final and binding." (*Id.*) However, the Court found that the "language of the disclaimer, however, also states that the employee manual does not create any rights to continued employment or working conditions. The creation of an arbitration program for settling employment disputes can be said to constitute a working condition." (*Id.* at 6.) Accordingly, the Court found that because it expressly was no contract with respect to "working conditions" the handbook could not be an

agreement to arbitrate.  (*Id.*)  "The trial court was correct that Travelers failed to carry its burden of demonstrating that an enforceable arbitration agreement existed." (*Id.*, Ex. A at 7.)[3]

All the conditions for issue preclusion are present.  While Travelers has not provided the above-quoted language from its handbook, it is provided in the *Allenza* opinion.  It also is mirrored by language in documents Travelers has provided, which likewise create a fatal ambiguity by stating that the employment handbook is not an agreement regarding <u>continued employment</u> or <u>working conditions</u>:

> Fifth, nothing herein constitutes a contract of employment for a definite period of time. . . . Travelers Group retains the right to decrease an employee's compensation and/or benefits, transfer or demote an employee, or otherwise change the terms or conditions of any employee's employment with the Company.

(Bengston Decl., Ex. E at 9-of-39.)

> NOTHING IN THIS HANDBOOK CONSTITUTES AN EXPRESSED OR IMPLIED CONTRACT OF EMPLOYMENT FOR ANY DEFINITE PERIOD OF TIME. TRAVELERS RETAINS THE RIGHT TO DECREASE AN EMPLOYEE'S COMPENSATION AND/OR BENEFITS, TRANSFER, TERMINATE OR DEMOTE AN EMPLOYEE, OR OTHERWISE CHANGE THE TERMS OR CONDITIONS OF ANY EMPLOYEE'S EMPLOYMENT WITH THE COMPANY.

(*Id.*, Ex. G at 4-of-29 (caps in original); *see also* Ex. H at 17-of-29; Ex. I at 3-of-15.)

The same issue decided in *Allenza* is presented here:  whether the handbook can enforce an "arbitration policy" when it also states it does not constitute an agreement regarding work conditions.  There was a final judgment on the merits of that same issue in *Allenza*, and Travelers is precluded from adjudicating the issue again.  *See Stolz*, 15 Cal.App.4th at 222. Application of the doctrine here is also clearly not "unfair."  (*See id.*)  Travelers had at least the same incentives to litigate the matter vigorously in the *Allenza* employment action and had at least the same advantages there that it enjoys now.  (*See id.*)

---

[3] The Court of Appeals decision in *Allenza v. Travelers* was unpublished.  However, California Rules of Court provide that an unpublished opinion may be cited or relied on when relevant to the doctrine of collateral estoppel.  Cal. Rule of Court 8.1115 (b).

1    Therefore, Travelers should be estopped from arguing that its employee handbook

2    imposes an enforceable "arbitration policy," and the adjudication in *Allenza* should be given

3    preclusive effect.[4]

4    **C.**    <u>**Travelers' Employee Handbook Does Not Create an Enforceable Agreement to Arbitrate.**</u>

5

6    **1.**    **Travelers Has Failed To Provide Its Entire Handbook, And May Not Rely On The Selected Portions It Provides To Create A Contract.**

7

8    By failing, as a threshold matter, to provide the complete document in question, Travelers

9    has failed to show that, by not quitting her employment, Denes consented to the "Arbitration

10    Policy" in the Travelers employee handbook. *See Green Tree Financial Corp. v. Randolph,* 531

11    U.S. 79, 90 (2000) ["In determining whether statutory claims may be arbitrated, we first ask

12    whether the parties agreed to submit their claims to arbitration"]; *Three Valleys Municipal Water*

13    *Dist., v. E.F. Hutton*, 925 F.2d 1136, 1141 (9th Cir. 1991) ["before a party to a lawsuit can be

14    ordered to arbitrate and thus be deprived of a day in court, there should be an express,

15    unequivocal agreement to that effect"]. A "well settled" and "paramount" rule of contract

16    interpretation is that: "The contract must be construed as a whole and the intention of the parties

17    must be ascertained from the <u>consideration of the entire contract, not some isolated portion</u>."

18    *County of Marin v. Assessment Appeals Bd.*, 64 Cal.App.3d 319, 134 Cal.Rptr. 349, 352 (1976)

19    (citing cases and statues) (emphasis added).

20    Defendants' entire argument for the existence of an arbitration contract relies on the

21    Travelers employee handbook and the "Arbitration Policy" purportedly imposed therein. (*See*

22    Travelers Memo. at 1-9.) Apparently, this handbook appeared in 1994, and continues to be used

23    at present in substantially identical form: "The Travelers arbitration policy was thereafter

24    distributed to all employees through internal company mail as part of the employee handbook

25    issued in July 1994." (Travelers' Memo. at 2.) "In addition, under the 'Principles of

26    Employment" section of the 1996 handbook employees are notified that as a condition of

employment they are required to observe Travelers policies, including Travelers Group

---

[4] Plaintiff's counsel believe that discovery is likely to bring to light other cases and evidence showing that not even Travelers believes its purported "Arbitration Policy" constitutes an enforceable agreement to arbitrate. (Fauth Decl. ¶ 2.)

PLAINTIFF'S MEMORANDUM IN                        CASE NO. C-07-04811 CW
OPPOSITION TO MOTION TO COMPEL
ARBITRATION        9

Employment Arbitration Policy." (*Id.* at 3.)  "The 2005 Arbitration Policy continued in substantially identical form the Arbitration Policy that had been in place for ten years, again making clear that 'arbitration [is] the required and exclusive forum for the resolution of all employment-related disputes . . . " (*Id.* At 5 (alteration in original).)

Travelers quotes portions from selected excerpts it provides from its handbook to argue that Denes entered into a binding arbitration agreement.  (*Id.* at 1-9.) Yet, Travelers fails to provide a complete handbook that would show the entirety of the purported contract.  (*See* Bengston Decl. and exhibits thereto.)  Therefore, as the "entire contract" must be considered to determine the intent of the parties, Travelers has failed to show "an express, unequivocal agreement" to arbitrate, and its motion must be denied.

### 2.    What Is Known About The Language Of The Travelers Handbook Establishes That It Cannot Constitute An Arbitration Agreement

Furthermore, what is known about the language of the Travelers employee handbook from the record in the *Allenza* case and from the handbook excerpts that are supplied by Travelers establishes that it cannot constitute an enforceable arbitration agreement.  The handbook is drafted by Travelers and, according to Travelers, must be accepted by employees as a condition of employment.  (Travelers Memo. at 3, 9.)  It is thus, at best, an adhesion contract, and any ambiguities in its terms must be construed against Travelers. *See Badie v. Bank of America*, 67 Cal.App.4th 779, 800 (1988).

The plain words of the employee handbook as well as documents describing it would cause any employee reading it to think it is not a contract:  "This handbook is provided for your information only.  It should not be considered in any way as creating a contract or guarantee of employment nor should it be construed as creating any rights, contractual or otherwise, to continued employment benefits or working conditions between any employee and the Company."  (Fauth Decl., Ex. A at 5.) "The information in this handbook is distributed as a matter of information only . . . " (Bengston Decl., Ex. E (letter describing handbook).) "[N]othing herein constitutes a contract of employment for a definite period of time. . . . Travelers Group retains the right to decrease an employee's compensation and/or benefits, transfer or demote an employee, or otherwise change the terms or conditions of any employee's

1  employment with the Company." (Bengston Decl., Ex. E at 9-of-39; *see also* Ex. G at 4-of-29;

2  Ex. H at 17-of-29; Ex. I at 3-of-15.)

3        Thus, running as a constant thread through the Travelers handbook and documents

4  describing it are statements that it is for informational purposes and does not create any right to

5  any working conditions.  This, of course, is because Travelers did not want its handbook to give

6  employees any enforceable rights.  The effect, though, is to create a conflict with the "Arbitration

7  Policy" language that Defendants quote selectively to argue that a contract exists.  (*See*

8  Travelers' Memo. at 1-5.)  Travelers cannot have it both ways.  An arbitration policy is

9  necessarily part of the employee's working conditions.  *See Armendariz v. Foundation*

10  *Psychcare Services, Inc.,* 24 Cal.4th 83, 110-111 (2000) (arbitration as condition of

11  employment); *Coppernoll v. Bd. of Directors*, 138 Cal.App.3d 915, 922 (1983) ("working

12  conditions . . . encompass a due process hearing before discharge").  Indeed, Defendants

13  themselves call arbitration an employment condition.  (*See e.g.,* Travelers' Memo. at 9 ("binding

14  arbitration policy [a] condition of employment").  Therefore, as the handbook says it does not

15  create a contract with respect to employment conditions, construing any ambiguities against

16  Travelers, the handbook does not constitute a contract enforcing arbitration.

### 3.    Defendants Have Not Shown That Denes Accepted An Agreement To Arbitrate

      Even if the Travelers employee handbook could constitute a binding arbitration contract

(it does not), Defendants have failed to show that Denes accepted such a contract.  As set forth

above, a contract to arbitrate must be knowingly accepted like all other contractual offers.  The

burden of making that showing is on Defendants.  *See Par-Knight Mills, Inc. v. Stockbridge*

*Fabrics Co.,* 636 F.2d 51, 44 n. 9 (3d Cir. 1980) (party seeking to compel arbitration bears initial

summary-judgment like burden); *Rosenthal v. Great Western Fin. Sec. Corp.,* 14 Cal. 4th 394,

413 (1996) (existence of arbitration agreement must be proven by preponderance of evidence).

      Defendants say Plaintiff was "notified in writing" annually over the last ten years of her

employment of the Travelers Arbitration Policy, creating an implied-in-fact contract which she

accepted by not resigning her position.  (Travelers' Memo. at 8-9.)  First, as set forth above,

Defendants have failed to provide the entire handbook in question, and provide only selective

portions, in contravention of the rule that a contract can be determined only after examining the entire document. *See County of Marin*, Cal. Rptr. at 352. Therefore, Defendants have not shown what Plaintiff supposedly read, and the Court cannot determine whether she would have thought her continued employment created an agreement to arbitrate—even if she had received and read the handbook. For example, discovery may reveal that language of the employee handbook or some related document states that employees will be required to sign an acknowledgement or agreement to arbitrate. In *Mitri v. Arnel Mgmt. Co.,* __ Cal. App. ___ (Dec. 12, 2007), involving a very similar handbook provision, the California Court of Appeals rejected defendants' argument that an employee agreed to arbitrate by continuing to work, finding that because there was contradictory language saying employees must sign a separate agreement, "the employee handbook's arbitration provision only placed plaintiffs on notice that they would be called upon to sign a separate arbitration agreement. . . . " (Fauth Decl., Ex. C at 9.)

Second, the Bengston declaration states that Defendants notified Plaintiff by sending her the Travelers employee handbook containing the Arbitration Policy and cover letters by the company's "internal company mail" or "interoffice mail system." (Bengston Decl. ¶¶ 3-12.) It is unclear exactly what that mail system is—i.e., whether it delivers physical mail or electronic documents—or how it operates. What is clear is that Defendants' assurance that the "mail box rule" applicable to the United States Postal Service should apply is misplaced.

The few letters that Travelers states were sent by themselves (without the handbook) are similarly deficient and incapable of establishing a contract. The July 22, 1994 letter, purportedly sent by "internal company mail" refers the reader to the employee handbook regarding the Arbitration Policy. (Benston Decl., Ex. A.) The April 5, 2004 email purportedly sent to all employees appears to be sent to two email lists: "All-StPaul-F&M-4" and "All-StPaul-F&M-5." (*Id.,* Ex. J.) Travelers provides no evidence Denes was on either of those lists, or that she would have seen the email. More important, it mentions the "Handbook for Employees" and "Travelers Employment Arbitration Policy" only in passing and mainly focuses on other documents which it says employees must read.

Furthermore, in contrast to the confusion and ambiguity regarding whether Travelers even delivered its purported arbitration agreement to employees, Travelers possessed a means of delivering and confirming receipt of important documents within its company system—which it

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

apparently failed to use here.  As set out in Denes' declaration, Travelers required employees annually to read and acknowledge online receipt of a "Code of Business Conduct and Ethics." (Denes Decl. ¶ 4.)  That method resulted in an entry in the employee's personnel file and an actual confirmation receipt.  (*Id.*, Ex. B.)  The fact that this available method for insuring delivery and receipt of important documents was not used here casts doubt on whether the purported arbitration agreement was delivered to employees at all.

Without discovery into Travelers' entire handbook and its internal mail procedures or other means of delivering the purported agreement, the Court should find that Defendants have not met their burden of proof.  Defendants' case law does not say otherwise.

Defendants cite to a litany of federal cases from other circuits that interpret the contract laws of states other than California, to argue that Denes accepted their arbitration policy by continuing to work.  (Travelers' Memo. at 7-9).  Defendants' reliance on those cases is misplaced, as it is California contract law that must be applied to determine the validity of Travelers' purported arbitration agreement.  *See Ingle*, 328 F.3d at 1170 ["Ingle was employed in California; we therefore evaluate Circuit City's arbitration agreement under the contract law of that state."]; *Adams*, 279 F.3d at 892.

Defendants cite to two California cases which it says establish that "continued employment constitutes acceptance" of the Travelers arbitration policy.  (Travelers' Memo. at 7.) The first of those cases, *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 14-15 (2000), is an unpublished opinion, which should not be cited.  Furthermore, it is not even on point, as leaving aside any dicta, it deals, not with contract formation, but with whether an employer's modifications to an undisputed contract were barred by the doctrine of mutuality of obligation.  *Asmus* at 1 (answering question certified by Ninth Circuit Court of Appeals).  "Significantly, however, neither *Asmus* nor *DiGiacinto v. Ameriko-Omserv Corp.* addressed whether an arbitration agreement existed between an employer and employee."  (Fauth Decl., Ex. C at 8.)

Defendants discuss the second case, *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416 (2000), at considerable length.  (Travelers' Memo. at 7-8.)  However, that Court of Appeals decision stands for the non-controversial proposition that a trial court, weighing opposing evidence, may decide whether an agreement mailed by U.S. Mail to the employee's residence and not returned by the post office had, in fact, reached her.  *Craig* at 417-419.  "The trial court

1    decided that issue in favor of Brown & Root, and its credibility call is binding on this appeal."

2    (*Id.* [affirming trial court ruling that an implied-in-fact contract existed].)  Here, Defendants have

3    not even provided the entire employee handbook in question, let alone proof that they delivered

4    it to Plaintiff by any means, let alone a means that should be presumed reliable.  Also, in- *Craig*,

     the record was presumably complete; here no discovery has taken place.

5    
6            For all the above reasons, the Court should find that Defendants have not shown the

     existence of a contract to arbitrate.

7    
8    **II.    EVEN IF TRAVELERS HANDBOOK IS A CONTRACT (IT IS NOT) THE**
         **ARBITRATION PROVISION CANNOT BE ENFORCED BECAUSE IT IS**
9        **UNCONSCIONABLE AND NOT SEVERABLE**

10           As set forth above, arbitration agreements are subject to the same general defenses that

11   would apply to any other contract (9 U.S.C. § 2), and these defenses arise under ordinary state

12   law principle that govern the formation of contract.  *First Options*, 514 U.S. at 944; *see also*

13   *Ingle*, 328 F.3d at 1170 [applying California state law when employment was to occur in

14   California].  The validity of the arbitration provision that Travelers now seeks to enforce will

15   turn on an application of California law.  Agreements to arbitrate may be invalidated if they are

16   found to be unconscionable.  Cal. Civ. Code section 1670.5.  The seminal California Supreme

17   Court case of *Armendariz v. Found. Health Psychare Services, Inc.*, 24 Cal.4[th] 93 (2000)

18   establishes a three-part analytical framework for scrutinizing agreements to arbitrate for

19   unconscionability.

20           The first step in the Armendariz analysis is to identify whether the agreement implicates

21   public or private rights.  *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 651 (2004).

22   The second step is to apply the appropriate tests of procedural and substantive unconscionability

23   to the arbitration provision.  While both procedural and substantive unconscionability must be

24   present for a court to refuse to enforce a contractual provision, they need not be present to the

25   same degree.  Courts use a sliding scale, wherein "the more substantively oppressive the contract

26   term, the less evidence of procedural unconscionability is required to come to the conclusion that

27   the term is unenforceable, and vice versa."  *Armendariz*, at 114.  Finally, the third step is to

28

1    determine whether offending portions may be severed from the arbitration provision, or whether

2    the provision must be stricken in its entirety.  *Id.*

3

4    ### A.    __Plaintiff Seeks Vindication of Her Public Rights__

5        Because statutorily protected public rights are not waivable, courts apply a higher

6    standard of analysis to them than to non-statutory private rights.  *Fitz v. NCR Corp.*, 118 Cal.

7    App. 4th 702 (2004).  Plaintiff seeks vindication of, *inter alia*, her right to be free from age

8    discrimination and harassment, which rights are protected by California's Fair Employment and

9    Housing Act (FEHA).  (Compl. at ¶ 25.)  "There can be no question that the statutory rights

10   established by the FEHA are 'for a public reason.'"  *Armendariz*, at 101.  As such, the

11   heightened standard for unconscionability will apply to this case.  *Id.*, at 102.

12

13   ### B.    __The Arbitration Provision is Procedurally Unconscionable__

14       Relevant factors in determining procedural unconscionability are oppression and surprise.

15   *Armendariz*, at 114.  Oppression arises from an unequal bargaining power such that one party

16   has no meaningful opportunity to negotiate or reject, and surprise occurs when contract terms are

17   obscured by the party seeking to enforce them.  *See generally*, *Kinney v. United HealthCare

18   Services, Inc.*, 70 Cal. App. 4th 1322 (Cal. App. 1999) [finding arbitration provision in

19   employer's mandatory employment contract was procedurally unconscionable].  "An employee's

20   awareness of the employer's mandate that disputes be resolved in a non-judicial forum 'does not

21   preclude a finding that the arbitration provision is nonetheless unenforceable.'"  *Abramson*, 115

22   Cal. App. 4th at 657 (quoting *Kinney*, at 1330).  In its Motion to Compel Arbitration, Defendant

23   Travelers cites *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1977) for the proposition that

24   "[p]rocedurally unconscionable arbitration agreements are characterized by oppression and

25   surprise resulting from the stronger party's 'hiding' the disputed terms."  (Mot. To Compel at 12,

26   line 25-28.)  Travelers then argues that because it provided clear notice to Plaintiff that it

27   required arbitration of all disputes, "there was nothing hidden about Travelers Arbitration

28   Policy," and concludes that "the arbitration agreement is not procedurally unconscionable."

     (Mot. to Compel at ¶ 13, line 3-5.)  However, by focusing exclusively on *surprise* and ignoring

1  *oppression* in analyzing procedural unconscionability, Travelers misconstrues the only case to

2  which it cites for this conclusion.

3  The *Stirlen* court was concerned with an employer's presentation of an arbitration

4  agreement on a "take it or leave it" basis, which is indistinguishable from how Travelers has

5  presented its repetitive iterations of the arbitration provision in question now.  On the very same

6  page to which Travelers cites, *Stirlen* recognized that "the threshold question is whether the

7  subject arbitration clause is part of a contract of adhesion, thereby establishing the necessary

8  element of procedural unconscionability."  *Id.* at 1533.  The court continued, "[t]he standard

9  definition of a "contract of adhesion" is 'a standardized contract, which, imposed and drafted by

10  the party of superior bargaining strength, relegates to the subscribing party only the opportunity

11  to adhere to the contract or reject it.'" *Id.* (quoting *Graham v. Scissor-Tail Inc.*, 28 Cal.3d 807

12  (1981)).  The *Stirlen* court then found that because the arbitration provision was presented on a

13  "take it or leave it" basis, it was a contract of adhesion, and "the procedural element of

14  unconscionability is present in this case."  *Stirlen*, at 1534; *see also Mercuro v. Superior Court*,

15  96 Cal. App. 4th 167, 174 (2002) [procedure was unconscionable where employer told employee

16  that he "did not have the option of signing the agreement" if he wanted to "make a living."]

17  There can be no doubt, therefore, that Travelers' arbitration provision is likewise

18  procedurally unconscionable.  Defendant Travelers similarly presented the arbitration provision

19  in question to Plaintiff Denes on a "take it or leave it basis," in that the letter purportedly

20  notifying Ms. Denes about Travelers' arbitration policy commands, "[y]our agreement to abide

21  by all of these policies is an express condition of your continued employment . . . ." (Bengston

22  Decl., Ex. J.)  Travelers required Ms. Denes either to accept the terms handed down to her from

23  Travelers management, or abandon her employment of many decades.   The arbitration provision

24  inflicted in this case is clearly procedurally unconscionable.

### C.    The Arbitration Provision is Substantively Unconscionable

Substantive unconscionability involves unduly harsh or one-sided results.  *Abramson*,

115 Cal. App. 4th at 656.  "But the paramount consideration in assessing conscionability is

mutuality."  *Id*.  Federal courts, when interpreting California law, have articulated that arbitration

agreements in the employment context are "typically and grossly one-sided, and therefore,

presumptively substantively unconscionable . . . [a]n employer may rebut this presumption if it

1  can demonstrate that its contract to arbitrate maintains the 'modicum of bilaterality' required

2  under California contract law." *Ingle*, 328 F.3d at 1174 n.10 (*citing Armendariz*, at 117-118).

3  As discussed above, courts apply a sliding scale, wherein greater evidence of procedural

4  unconscionability will lower the threshold of substantive unconscionability that would invalidate

5  a contract. *Armendariz*, at 114.  Because Travelers' arbitration provision is extremely

6  unconscionable procedurally, even a small amount of substantive unconscionability will render

7  that provision unenforceable.  As set forth in detail below, Travelers' arbitration provision fails

8  multiple relevant tests for substantive unconscionability, and thus, Travelers cannot rebut the

9  presumption that its arbitration provision is unconscionable.

10            **1.      The Provision Imposes Unreasonable Forum Costs on Employees**

11       "[W]hen an employer imposes mandatory arbitration as a condition of employment, the

12 arbitration agreement or arbitration process cannot generally required the employee to bear any

13 type of expense that the employee would not be required to bear if he or she were free to bring

14 the action in court.  This rule will ensure that employees bringing FEHA claims will not be

15 deterred by costs greater than the usual costs incurred during litigation, costs that are essentially

16 imposed on an employee by the employer." *Armendariz*, , at 110-111.  The analysis of costs is a

17 categorical one: any <u>type</u> of expense that would not have to be paid in court must not be required

18 in arbitration, regardless of the amount or the plaintiff's ability to pay.  The categorical approach

19 avoids a difficult case-by-case analysis that would turn "a motion to compel arbitration into a

20 mini-trial . . . ." *Id.; see also Little v. Auto Stiegler, Inc*., 29 Cal.4th 1064 (2003) [holding that

21 the categorical approach to arbitration costs does not conflict with the Federal Arbitration Act].

22       Travelers arbitration provision requires injured parties to pay costs unique to arbitration.

23 Travelers improperly requires an employee who wants a recorded hearing to pay for the presence

24 of a court reporter.  Because a record of the hearing is required for meaningful judicial review,

25 the request for such a record is, in practical terms, a necessity.  The arbitration provision

26 provides, "[t]here shall be no stenographic record of these proceedings unless either party

27 requests it.  [i]n the event a party requests a stenographic record, that party shall bear the cost of

28 such a record."  (Bengston Decl. Ex. K at ¶ 10 "Stenographic Record".)  Because a litigant in a

judicial proceeding would not be required to pay for the mere attendance of a court reporter at

court, this provision violates the "no additional cost" requirement of *Armendariz*. It is, therefore, substantively unconscionable.

### 2.    Travelers Retained a Unilateral Right to Modify the Handbook

Arbitration provisions fail to provide the minimal level of mutuality when they, by their terms, denude the employee of any power to negotiate changes, while vesting in the employer exclusive authority to modify or cancel those provisions. *Ingle v. Circuit City*, 328 F.3d at 1179. The court in *Ingle* found this shift of forward-looking power to the employer to be sufficiently one-sided as to render the agreement substantively unconscionable:

> By granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes and employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement. Therefore, we conclude that the provision affording Circuit City the unilateral power to terminate or modify the contract is substantively unconscionable.

*Id*. Travelers arbitration provision fails this test of substantive unconscionability for exactly the same reason. The employee handbook – in which the arbitration provision is found – reads as follows:

> The Company, for any reason, may unilaterally, in its sole discretion, create, amend, supplement, modify, or eliminate the Employment Arbitration Policy. Any such change to the Arbitration Policy shall be effective 30 days after you received notice of such change.

(Bengston Decl. at ¶ 10 and Ex. I.) Because Travelers' reservation of unilateral right to alter the arbitration agreement is indistinguishable from that found in *Ingle v. Circuit City*, and because the provision in *Ingle v. Circuit City* was found to be substantively unconscionable, Travelers arbitration provision must also be substantively unconscionable.

### 3.    The Provision Impermissibly Limits Discovery

To ensure that statutory claims are vindicated, mutuality and adequacy of discovery must be assured in arbitration. *See generally*, *Armendariz*, *supra.* The Armendariz court held that parties may agree to "something less than the full panoply of discovery provided in Code of Civil Procedure section 1283.05," but to meet minimum standards of fairness, that discovery must be

sufficiently extensive to allow aggrieved parties to prove their claims. 24 Cal.4th at 105.
Because extensive discovery is frequently required to claims of employment discrimination,
restrictions on discovery in that context are suspect. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702
(2004).

> Travelers' arbitration provision unduly restricts the available discovery to:

> [o]ne set of interrogatories (limited to the identification of potential witnesses)
> and one set of requests for the production of documents in a form consistent with
> the Federal Rules of Civil Procedure. Upon the request of a party, the arbitrator
> may order further discovery consistent with the Rules of the AAA and the
> expedited nature of arbitration.

(Bengston Decl., Ex. K at ¶ 12 "Discovery.") Although these restrictions might appear to be
mutually applicable to both sides, they are not. Here, the decision in *Fitz*, *supra*, is instructive.

In *Fitz*, the plaintiff was hired by NCR Corporation in 1981, and in 1996, NCR adopted a
mandatory arbitration policy. That policy underwent numerous revisions before plaintiff was
terminated in 2001. She filed a lawsuit alleging age-based harassment in violation of FEHA, and
NCR moved to compel arbitration. Finding that the NCR's restriction of discovery to two
depositions was an unconscionable restriction on *plaintiff's* discovery, the court said, "this is
because the employer already has in its possession many of the documents relevant to an
employment discrimination case as well as having in its employ many of the relevant witnesses."
*Fitz*, at 715 (quoting *Mercuro*, 96 Cal. App. 4th 167, 183 (2002).) "Given the complexity of
employment disputes, the outcomes of which are often determined by the testimony of multiple
percipient witnesses, as well as written information about the disputed employment practice. . . ."
*Id*.

Remarkably, the arbitration agreement that Travelers now seeks to enforce, quoted above,
does not provide for *any* depositions. Further, Travelers limits interrogatories to only those
required for the "identification of potential witnesses," which is counterintuitive, as depositions
of those witnesses are not included in the scope of discovery. Because Ms. Denes seeks to prove
that she was the subject of age discrimination – just as the plaintiff in *Fitz* – she will require
greater discovery tools than those which Travelers provides.

Travelers' arbitration provision would allow the arbitrator to "order further discovery
consistent with the Rules of the AAA and the expedited nature of arbitration." However,

granting the arbitrator this discretion is inadequate.  It should be noted that Travelers' first arbitration policy, issued in 1996, did not allow for any discretion to add discovery.  (Bengston Decl. at ¶ 3 and Ex. B at ¶ 13 "Discovery.")   Travelers revised this in 1998 to provide that "if a party shows substantial need, the arbitrator can order further discovery."  (Bengston Decl. at ¶ 6 and Ex. E at ¶ 13 "Discovery.")  Apparently reacting to case law critical of this "substantial need" standard, Travelers again revised its arbitration provision in 2002 to provide that "[u]pon the request of a party, the arbitrator may order further discovery consistent with the Rules of the AAA and the expedited nature of arbitration.  (Bengston Decl. at 8 and Ex. G at ¶ 12 "Discovery.")

Thus, Travelers now defers to whatever the "Rules of the AAA" establish as the standard by which arbitrators assess, in their discretion, requests for additional discovery.  The applicable AAA rule is as follows.

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers <u>necessary</u> to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

Rule 9 ("Discovery"), *Employment Arbitration Rules and Mediation Procedures*, American Arbitration Assocation (2006) (emphasis added).  Therefore, Travelers requires arbitrators to apply a "necessary" standard in deciding whether to allow additional discovery.

Courts have determined that, in the employment discrimination context, such discretion is inadequate to maintain the modicum of mutuality required by Armendariz.  "Granting the arbitrator discretion to determine whether additional discovery is necessary, as the [employer's] policy does, is an inadequate safety valve.   In deciding whether to allow additional discovery, the arbitrator is constrained by an impossibility standard."  *Fitz*, at 717.  As a practical matter, an arbitrator's determination of what discovery is 'necessary' is tantamount to a determination that claims are 'impossible' to be proven without that discovery.  These standards are two sides of the same coin.  Because *Fitz* rejected such a standard, Travelers' deference to the Rule 9 in this context also fails.  The lack of a guarantee of any depositions and a severe restriction on interrogatories and demands for production of documents means that an employee could be denied other discovery, which would be highly unfair. This is not to say that all limitations on discovery in arbitration are *ipso facto* invalid; rather, consistent with Armendariz, when such

limitations are presented, as here, in a contract of adhesion to an employee seeking to vindicate her statutory rights, such limitations are inherently suspect and, therefore, substantively unconscionable.

### 4.    The Provision Fails to Provide the Required Mutuality

The hallmark of unconscionability is a lack of mutuality. "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." *Abramson v. Juniper Networks, Inc.*, 118 Cal. App. at 652 (quoting *Little v. Auto Stiegler*, 29 Cal.4th at 1071.) Substantive unconscionability arises when, for example, the stronger party forces upon the weaker "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." *Armendariz*, at 119. A lack of mutuality is apparent when an employer requires the employee to arbitrate his or her claims while reserving to itself the right to litigate. *See generally*, *Armendariz*, *supra*. "In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th. Cir. 2003).

Plaintiff challenges Travelers arbitration provision as lacking mutuality in that it requires plaintiff to arbitrate the claims she is most likely to bring, while permitting Travelers to seek judicial relief for claims it is likely to bring. First, it should be noted the provision appears facially neutral: "The Policy makes arbitration the required and exclusive forum for the resolution of all employment-related disputes based on legally protected rights . . . that may arise between an employee or former an employee and the Company . . . ." (Bengston Decl., Ex. K at 1.) However, this facially neutral introduction is followed by a list of claims that might be arbitrated, and"[t]he list of of legal claims that the arbitration agreement covers is telling." *Ingle v. Circuit City*, 328 F.3d at 1174 n.8. That list includes:

> claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Sarbanes Oxley Act of 2002, the Worker Adjustment and Retraining Notification Act, and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions of employment or termination of employment.

(Bengston Decl. Ex. K at 1.)  This is, essentially, a list of claims that only an employee would bring against an employer.  In fact, nowhere in Travelers' arbitration provision or employee handbook is there a comparable listing of claims that Travelers, like its employees, is compelled to arbitrate.  There appear to be no claims that an employer would bring against an employee, and thus, the intent behind this provision is clearly one-sided.

In its latest iteration of the arbitration provision, Travelers specifically exempts from arbitration claims by "either party" that seek "injunctive relief from any court of competent jurisdiction in aid of arbitration or on the ground that the award to which the applicant for such relief may be entitled may be rendered ineffectual without such relief, such as injunctive relief intended to redress a violation of a restrictive covenant."  *Id.*   However, that same provision later provides that ""the Company reserves the right to pursue injunctive relief to secure compliance with any restrictive covenants or other obligations to which the employee remains subject."  *Id.* at 14.  This glaring inconsistency is ambiguous at best, and thus, should be construed against the drafting party: Travelers.  It is unclear what restrictive covenant an employee might want to enforce against Travelers, yet there are numerous restrictive covenants that Travelers might want to enforce against employees.  For example, in its "Code of Business Conduct and Ethics," Travelers establishes restrictions on (i) buying or selling securities, (ii) restrictions on creating conflicts of interest, and (iii) restrictions on disclosing company "trade secrets." (Denes Decl., Ex. A, at 3, 4, 6, respectively.)  Additionally, Travelers' "Code of Conduct for St. Paul Travelers System Users" restricts employees' use of computer resources at Travelers and threatens that failure to comply "may result in disciplinary action, up to and including termination of employment or association with St. Paul Travelers, and/or appropriate <u>legal action</u>.  (Denes Decl., Ex. A at 1) (emphasis added).

Arbitration provisions that expressly permit employers to seek restrictive covenants have been found not to be mutual by California courts.  *See*, *e.g.*, *Stirlen*, *supra* [finding no evidence of a justification for employer to exempt from arbitration the employers claims for injunctions enjoining disclosure of intellectual property]; *Fitz*, *supra*, [finding that employer's arbitration provision permitting court injunctions to restrict employee's use of trade secrets was not mutual]; *Abramson*, *supra*, [finding that arbitration provision that permitted either party to seek court injunction for trade secret covenants was, in practice, not mutual]; *Mercuro*, *supra*, [finding that

arbitration exclusions for intellectual property violations and trade secrets was one-sided, not justified and, therefore, not mutual]; *O'Hare v. Municipal Resource Consultants*, 107 Cal. App. 4th 267 (2003) [finding unconscionable the employer's reservation of right to seek injunctive enjoining employees trade secret or anti-competitive conduct].

While Travelers does not express the intent of its language permitting parties to seek court injunctions to enforce restrictive covenants, this court can "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting v. AT&T*, 319 F.3d at 1149 . Specifically, the Court in *Fitz* found that an arbitration provision was "unfairly one sided because it compels arbitration of the claims <u>more likely</u> to be brought by [plaintiff], the weaker party, but exempts from arbitration the types of claims that are <u>more likely</u> to be brought by [the employer], the stronger party. *Fitz*, at 720 (emphasis added). It is, therefore, clear that Travelers seeks to reserve the availability of judicial injunctive relief for itself. There is little, if any, justification for doing so, as the very same injunctive relief is available to Travelers in the arbitral setting. (Bengston Decl. Ex. K at ¶ 20(b) [arbitrator may award any relief that may be awarded in a court of law].)

Both in practice and intent, Travelers arbitration provision lacks sufficient mutuality. It is therefore unconscionable and should not be enforced.

> ### D.    <u>Unconscionable Terms of the Arbitration Provision Cannot Be Severed Because Those Terms Permeate the Provision and Severance Would Require New Terms In Their Place</u>

When a contract for arbitration is found to be both procedurally and substantively unconscionable, the final analytical step is to determine whether the contract can be saved by striking the offending portions, or whether the court should refuse to enforce that contract altogether. *Armendariz*, at 122-124. Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

In determining whether severance is permissible, the "overarching inquiry is whether the interests of justice . . . would be furthered by severance . . . [m]oreover, courts must have the

capacity to cure the unlawful contract through severance or restriction of the offending clause, which is not invariably the case." *Armendariz*, at 124. For reasons set forth below, Travelers' arbitration provision is not susceptible of proper severance and must, therefore, be stricken in its entirety.

### 1.    Multiple Unconscionable Elements Permeate The Arbitration Provision

The *Armendariz* court found significant the fact that the arbitration provision in question "had more than one unlawful provision" and determined that this weighed against severance. "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.*, at 124. In both *Armendariz* and *Fitz*, *supra*, the presence of just two unlawful terms lead to arbitration agreements being stricken in their entirety.

Travelers' arbitration provision, as explained above, contains not two, but at least *four* unconscionable terms. Travelers forces categorically-prohibited costs onto employees, reserves an overreaching unilateral right to modify or dissolve the arbitration provision, unduly restricts the discovery available to employees and fails to provide the requisite mutuality of claims. If two unconscionable terms are sufficient for a finding that severance is not appropriate, then four terms solidify that conclusion. These "defects indicate a systematic effort to impose arbitration on an employee not . . . as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Fitz*, at 725 (quoting *Armendariz*, at 124).

### 2.    Severance Would Require the Court to Insert New Contract Language

"[C]ourts will find a contract permeated by illegality or unconscionability when 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.'" *Abramson v. Juniper Networks*, 115 Cal. App. 4th, at 656 (quoting *Armendariz*, at 125). "In such situations, "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Id.*; *see also Fitz*, at 726 [indicating that replacing limitations on discovery with other rules would be "in effect" to rewrite the agreement."]

To save Travelers unconscionable arbitration provision, this Court would similarly have to rewrite and insert new contractual language. To strike the term apportioning the costs of a stenographic record would leave the parties in a contractual void regarding those costs. The same problem would arise if the Court struck the applicable standards by which requests for additional discovery were to be measured. If the Court extirpated Travelers' reservation of right to make unilateral change the arbitration provision, the procedure by which changes may occur would remain undefined. In light of the need to insert additional terms, severance is not a viable option for the Court.

### 3. There Is No Ongoing Contractual Relationship to Conserve, and Plaintiff Will Not Receive Gain an Undeserved Benefit if the Court Invalidates the Entire Arbitration Provision

The *Armendariz* court enunciated two reasons for severing offending portions of an agreement instead of invalidating the entire agreement. Neither of those reasons is present here.

The first reason is "to prevent parties from gaining underserved benefit or suffering undeserved detriment as a result of voiding the entire agreement . . . ." *Armendariz*, at 123. After enduring an insidious campaign of age discrimination to oust her after over thirty years of loyal employment, Plaintiff Denes gains no "undeserved benefit" from vindicating her statutory rights in court rather than in arbitration. Further, Travelers has sufficient resources to defend its practices in either forum, so it sustains no "undeserved detriment" by defending in this Court.

The second reason for preferring severance over complete invalidation is "to conserve a contractual relationship if to do so would not be condoning an illegal scheme." *Id.* However, assuming *arguendo* that there ever was a contractual relationship created by the employee handbook that Travelers now seeks to enforce, that contractual relationship ceased on the day that Travelers terminated Ms. Denes. Therefore, there is nothing remaining to conserve. With no articulated policy reason to preserve the arbitration provision that is riddled with unconscionable terms, that provision should be stricken in its entirety, and the parties should proceed in this judicial forum.

### III. PLAINTIFF'S UNFAIR COMPETITION CLAIMS FOR INJUNCTIVE RELIEF ARE NOT ARBITRABLE AS A MATTER OF LAW

Even if the Court decides that Travelers has a right to compel arbitration, plaintiff's claims for injunctive relief under California's Unfair Competition Law (UCL), Business and

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

CASE NO. C-07-04811 CW

25

Professions Code section 17200, cannot be arbitrated.  In her Complaint, Plaintiff asserts that she has standing to pursue an unfair competition claim pursuant to UCL because she has suffered injury in fact.  (Compl. ¶ 55.)  Thereon, she seeks an injunction to stop the "ongoing and continuing threat to the public."  (Compl., ¶ 56.)   Plaintiff's cause of action seeking injunctive relief on behalf of the general public is not arbitrable as a matter of law.

The Supreme Court has recognized that there is an inherent conflict between the policy favoring arbitration and the policy of providing injunctive relief to protect the public:

> First, that relief is for the benefit of the general public rather than the party bringing the action . . . Second, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.

*Cruz v. PacifiCare Health Systems, Inc.,* 30 Cal.4th 303 (2003) (quoting *Broughton v. Cigna HealthPlans*, 21 Cal.4th 1066, 1075-1077 (1999), 1082).  Plaintiff brings the instant case to redress injuries she sustained as well as prevent future injuries to the public.  To the extent that she uses her private attorney general status to protect the public, her claims are similarly subject to these inherent conflicts.  Accordingly, her claim for injunctive relief should not be subject to compulsory arbitration.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Arbitration should be denied in its entirety.  If the Court does not deny Defendants' motion, it should defer its ruling until Plaintiff has had opportunity to conduct relevant discovery.


**LAW OFFICES OF MICHAEL J. MEYER**


Date:  December 20, 2007          By:    /s/
                                            Michael J. Meyer

                                      1801 Clement Avenue, Suite 101
                                      Alameda, California  94501
                                      Telephone (510) 931-5720
                                      Facsimile (510) 337-1431

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon M. Fauth, Jr.
**FAUTH LAW OFFICES**
1801 Clement Avenue, Suite 101
Alameda, California  94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

Attorneys for Plaintiff Eva Denes