Gordon M. Fauth, Jr. (State Bar No. 190280)
**FAUTH LAW OFFICES**
1801 Clement Avenue, Suite 101
Alameda, California  94501
Telephone (510) 238-9610
Facsimile (510) 337-1431
gmf@classlitigation.com

Michael J. Meyer  (State Bar No. 242706)
**LAW OFFICES OF MICHAEL J. MEYER**
1801 Clement Avenue, Suite 101
Alameda, California  94501
Telephone (510) 931-5720
Facsimile (510) 337-1431
Michael.Meyer@Meyer-Legal.com

Attorneys for Plaintiff Eva Denes

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

EVA DENES,

            Plaintiff,

      v.

TRAVELERS INDEMNITY COMPANY, a
Connecticut Corporation; YVONNE
GARRISON, an individual; and DOES 1
through 50, inclusive,

            Defendants

Case No. C-07-04811 CW

**DECLARATION OF GORDON M.
FAUTH, JR. IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
ARBITRATION**

Date:  January 10, 2008
Time:  2:00pm
Dept:  2, 4th Floor
Judge:  The Honorable Claudia Wilken

    I, Gordon M. Fauth, Jr., declare as follows:

    1.   I am a member in good standing of the California bar; and am an attorney of record for

Plaintiff Eva Denes in this case.  I have personal knowledge of the facts stated herein and, if called on to

do so, could and would testify competently thereto.

1       2.    Discovery in this case has not yet commenced. Defendants are in possession of documents

2  and information that Plaintiff needs to fully respond to Defendants' arguments regarding the

3  enforceability of Defendants' purported arbitration policy, including among other things, the entire

4  Travelers employee handbook, documents describing or relating to the handbook, information relating to

5  delivery of the handbook to employees including Plaintiff purportedly through Travelers internal mail

6  system or by other means, and information relating to other employment cases against Travelers which

   may have preclusive effect with respect to the enforceability of Travelers' arbitration policy.

7       3.    Attached hereto as **Exhibit A** is a true and correct copy of an unpublished 1998 opinion by

8  the California Court of Appeals affirming a decision in *Allenza v. The Travelers Indemnity Co., et al.*

9  (Contra Costa County Super. Ct. No. C96-04655), which found that the Travelers employment handbook

10  did not constitute a contract to arbitrate employee disputes.

11       4.    Attached hereto as **Exhibit B** is a true and correct copy of Travelers' memorandum in support

12  of its motion to compel arbitration in *Allenza v. The Travelers Indemnity Co., et al.* (Contra Costa County

   Super. Ct. No. C96-04655).

13       5.    Attached hereto as **Exhibit C** is a true and correct copy of the California Court of Appeals

14  decision in *Mitri v. Arnel Management Co.,* __ Cal. App. ___ (Dec. 12, 2007).

15       I declare under penalty of perjury that the foregoing is true and correct. Executed on December

16  20, 2007 at Alameda, California.

Gordon M. Fauth, Jr.

# EXHIBIT A

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT



DIVISION ONE

RECEIVED

JUN 2 - 1998

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____
. Deputy Clerk

FILED
Court of Appeal - First App. Dist.

MAY 2 ? 1998

RON D. BARROW, CLERK
By _____
DEPUTY

ANTHONY S. ALLENZA,

    Plaintiff and Respondent,

    v.

THE TRAVELERS INDEMNITY
COMPANY et al.,

    Defendants and Appellants.

A078493
(Contra Costa County
Super. Ct. No. C96-04655)

---

    The Travelers Indemnity Company and other corporate and individual defendants (collectively referred to as Travelers) appeal the trial court's denial of a petition to compel arbitration of a wrongful termination action.[1]  Travelers argues that a provision in its employee handbook is an enforceable contract to arbitrate employment disputes.  Because the handbook itself states that it creates no contractual rights, we affirm the trial court's decision.

---

[1] The other defendants were The Travelers Insurance Group, Inc., The Travelers/Aetna Property Casualty Corp., The Travelers Group, Inc., Ralph Dean, Paul Eilers, Rich Jones and Michael Stone.  The causes of action were for breach of contract, breach of the implied covenant of good faith and fair dealing, age discrimination, intentional infliction of emotional distress, fraud, negligent misrepresentation and violation of public policy.

1

## BACKGROUND

Anthony Allenza was hired by Travelers in March of 1974 to work in the claims department. He worked for Travelers continuously for over 21 years. Allenza believed that Travelers had a policy that an employee who performed services as a good and faithful employee would not be discharged except for good cause. Allenza was repeatedly told by his supervisors that he was doing a satisfactory job. In June or July of 1994, Travelers added an internal dispute resolution procedure (IDR) and an alternative dispute resolution procedure (ADR) to the employee handbook. According to Travelers, all employees were sent notices of the new procedures and copies of the actual handbook in late July of 1994. Despite appellant's history of satisfactory service, in December of 1994, he was given an unsatisfactory performance evaluation without adequate reason. In October of 1995, Allenza was terminated.

In January of 1997, following issuance of a right to sue letter from the California Department of Fair Employment and Housing, Allenza filed a complaint against Travelers and others for wrongful termination, alleging seven causes of action. On March 21, Travelers filed a petition to compel arbitration. (Code Civ. Proc., § 1281.2.)[2] Travelers attached the two sections of the employee handbook which contained the IDR and ADR procedures to its petition to compel arbitration. Following briefing and oral argument, the trial court denied the petition, stating: "I don't find that the defendant has established the existence of an agreement to arbitrate." Travelers and the other

---

[2] Code of Civil Procedure section 1281.2 provides, in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:  [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement."

defendants appealed. (Code Civ. Proc., § 1294, subd. (a) [denial of petition to compel arbitration is appealable order].)[3]

## DISCUSSION

Travelers asserts multiple arguments regarding the policy in favor of arbitration agreements, the purported applicability of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), Allenza's reliance on personnel policies as the source of his claim of breach of contract, a lack of unconscionability in the arbitration provision, and other related contentions. However, Travelers fails to show there was ever any written agreement to arbitrate.

The framework for a court's consideration of a request to compel arbitration was set out recently in *Cione* v. *Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625. "'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]' [Citation.] As noted, the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally. [Citations.] Hence, in seeking to compel arbitration, [the employer] was required to prove the existence of an enforceable agreement containing a provision mandating arbitration of the employment dispute . . . ." (*Id.* at pp. 634-635.)

Therefore, the first question for this court is whether there is a contract between Travelers and Allenza agreeing to arbitrate employment disputes. In attempting to counter Allenza's argument that there is no agreement to arbitrate, Travelers argues that "[c]ourts have repeatedly upheld arbitration provision[s] contained in 'unilateral' employee handbooks, without requiring each employee to individually 'agree' to the arbitration provision." In support of this statement, it cites *Delaney* v. *Continental*

---

3  Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

*Airlines Corp.* (C.D.Cal. 1993) WL 325563, a case not published in the Federal Supplement, which involved an employee who himself invoked the appeal procedure set out in the employer's policy manual, and when he lost, attempted to argue he did not know the procedure was binding. The key fact in *Delaney,* as stated by the district court judge, was that the employee's letter requesting arbitration of his claim was a consent to the applicability of the arbitration clause. There is no similar consent or recognition or acceptance of the arbitration clause in the instant case.

In its reply brief, Travelers argues that Allenza has missed the point in arguing that there is no arbitration contract because unilaterally inserted provisions in employee handbooks have been enforced in the courts. It cites *Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 415, footnote 9, as an example. However, *Dryer* involved the arbitration provisions of a National Football League collective bargaining agreement. (*Id.* at p. 412.) The footnote cited by Travelers is merely a statement that adhesion contracts may be enforced unless they violate the weaker party's reasonable expectations. *Dryer* does not stand for the proposition that all parts of every employee handbook are contracts. The only other case cited in support of Travelers' contention that there is a contract is *Fregara* v. *Jet Aviation Business Jets* (D.N.J. 1991) 764 F.Supp. 940, which actually supports Allenza's argument. In *Fregara,* the employee was arguing that an employee handbook, which had been distributed to all new employees, provided an implied promise of job security. The district court judge, applying New Jersey law, stated that implied promises in employee handbooks could be enforced "in the absence of a clear and prominent disclaimer . . . ." (*Id.* at p. 949.) *Fregara* makes it clear that the handbook itself may negate the existence of a contract.

Travelers did not comment on Allenza's citation of *Nelson* v. *Cyprus Bagdad Copper Corp.* (9th Cir. 1997) 119 F.3d 756 (cert. den. ___ U.S. ___ [118 S.Ct. 1511] April 20, 1998, Supreme Ct. Dock. No. 97-1137), which holds that an employee's continued employment after reading an employee handbook was not a knowing

agreement to arbitrate employment disputes even though, unlike Allenza, the employee had signed an acknowledgment that he received and understood the contents of the handbook. (*Id.* at pp. 758, 762.) *Nelson* relied on the controversial Ninth Circuit case of *Prudential Ins. Co. of America* v. *Lai* (9th Cir. 1994) 42 F.3d 1299 in reaching its decision. (See, e.g., *Brookwood* v. *Bank of America* (1996) 45 Cal.App.4th 1667, 1673 [noting criticism of the *Lai* requirement that statutory discrimination claims could be arbitrated only when the procedure was "knowingly accepted" by the employee] and *Cione* v. *Foresters Equity Services, Inc.*, *supra*, 58 Cal.App.4th at p. 645 [noting criticism of *Lai*].)

   We need not enter the debate about unilaterally imposed contractual provisions in employee handbooks because the employee handbook published by Travelers expressly states that it does not create a contractual relationship. Although Travelers filed only the arbitration clause of the manual, Allenza submitted the entire manual to the trial court as an exhibit to his opposition. The first page of the text of the manual states: "This handbook is provided for your information only. It should not be considered in any way as creating a contract or guarantee of employment nor should it be construed as creating any rights, contractual or otherwise, to continued employment benefits or working conditions between any employee and the Company."

   At oral argument, Travelers contended that despite the disclaimer in the manual, the arbitration policy itself states that it is final and binding. The informal dispute resolution procedure and the arbitration policy are contained in appendix B of the manual. The informal dispute resolution procedure merely states that employees may request resolution of any employment-related concern through the procedure. The arbitration policy states that it makes arbitration the "required, and exclusive, forum for the resolution of all employment disputes," but it does not require Travelers to institute arbitration for such disputes. Travelers argues that this language in the appendix to its manual supersedes the introductory language which disclaims the creation of contractual

rights. Travelers contends that it only intended to disclaim contractual rights to continued employment. The language of the disclaimer, however, also states that the employee manual does not create any rights to continued employment or working conditions. The creation of an arbitration program for settling employment disputes can be said to constitute a working condition. (See, e.g, *Coppernoll* v. *Board of Directors* (1983) 138 Cal.App.3d 915, 922 ["working conditions" include right to a hearing prior to discharge].) We conclude that the disclaimer of contractual rights at the beginning of the manual, by its terms, applies to working conditions, including the arbitration policy for resolving disputes contained in appendix B.

Travelers' arguments that its policy is fair and not unconscionable are beside the point. There is no contract in existence, pursuant to Travelers' own language. We need not even consider whether an employee, faced with a provision in an employee manual which is intended to create a contractual arbitration right, accepts the language by failing to quit his job. (See, e.g., Bales, <u>Compulsory Arbitration of Employment Claims:  A Practical Guide to Designing and Implementing Enforceable Agreements</u> (1995) 47 Baylor L.Rev. 591, 615-616 [noting that attempting to unilaterally impose an arbitration requirement is a gamble]; Buse, <u>Contracting Employment Disputes Out of the Jury System</u> (1995) 22 Pepperdine L.Rev. 1485, 1527-1528 [noting that courts are less likely to consider a unilaterally imposed arbitration policy as binding].)  The Travelers' provision expressly declined to establish any contractual rights, which makes it unnecessary to address any other issues.

## DISPOSITION

The trial court was correct that Travelers failed to carry its burden of demonstrating that an enforceable arbitration agreement existed. The order appealed from is affirmed.

_____

Dossee, J.

We concur:

_____

Strankman, P. J.

_____

Swager, J.

*Allenza* v *Travelers Indemnity Co.*, A078493

7

# EXHIBIT B

**EXHIBIT B**





1  GIBSON, DUNN & CRUTCHER LLP
   CHRISTOPHER J. MARTIN, SBN 082456
2  SUSAN B. BURR, SBN 104269
   525 University Avenue
3  Suite 220
   Palo Alto, California 94301
4
   (415) 463-7300
5
   Attorneys for Defendants THE TRAVELERS
6  INDEMNITY COMPANY, THE TRAVELERS
   INSURANCE GROUP, INC., THE
7  TRAVELERS/AETNA PROPERTY
   CASUALTY CORP., THE TRAVELERS
8  GROUP, INC., RALPH DEAN, PAUL EILERS
   and RICH JONES
9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 FOR THE COUNTY OF CONTRA COSTA

12

13  ANTHONY S. ALLENZA,                    CASE NO. C96-04655

14            Plaintiff,                   NOTICE OF PETITION AND PETITION
                                           FOR ORDER COMPELLING
15       v.                                ARBITRATION AND FOR ORDER
                                           DISMISSING OR, IN THE ALTERNATIVE,
16  THE TRAVELERS INDEMNITY                STAYING ACTION; MEMORANDUM OF
    COMPANY, THE TRAVELERS                 POINTS AND AUTHORITIES IN SUPPORT
17  INSURANCE GROUP, INC., THE             THEREOF
    TRAVELERS/AETNA PROPERTY
18  CASUALTY CORP., THE TRAVELERS          Date: 4-14-97
    GROUP, INC., RALPH DEAN, PAUL          Time: 9AM
19  EILERS, RICH JONES, MICHAEL STONE,     Dept: 9
    and DOES 1-100 inclusive,
20                                         Discovery cutoff:  NONE
            Defendant.                     Motion cutoff:    NONE
21                                         Trial date:       NONE

22
                                           [APPENDIX OF NON-CALIFORNIA
23                                         AUTHORITIES SUBMITTED
                                           CONCURRENTLY HEREWITH]
24

25  TO PLAINTIFF ANTHONY S. ALLENZA AND HIS ATTORNEYS OF RECORD:

26       PLEASE TAKE NOTICE that on ____4-14-97____ at __9.00__ a.m., or as soon

27  thereafter as the matter may be heard in Department _9_ of the above entitled Court, located at

28

725 Court Street, Martinez, California, Defendants THE TRAVELERS INDEMNITY

COMPANY, THE TRAVELERS INSURANCE GROUP, INC., THE TRAVELERS/AETNA

PROPERTY CASUALTY CORP., THE TRAVELERS GROUP, INC., RALPH DEAN,

PAUL EILERS and RICH JONES (collectively "Defendants") will, and hereby do, petition

this Court, pursuant to California Code of Civil Procedure § 1281.2, for an order compelling

arbitration of this entire action and dismissing this action.  In the alternative, Defendants

petition, pursuant to California Code of Civil Procedure § 1281.4, for an order staying further

prosecution of this action pending arbitration of any claims deemed arbitrable by this Court.

This Petition is based upon this Notice, the accompanying Memorandum of Points and

Authorities, the complaint on file herein, and such additional evidence and argument as may

be presented to this Court.

DATED:  March 6, 1997                  GIBSON, DUNN & CRUTCHER LLP

By: _____
              Susan B. Burr

Attorneys for Defendants THE TRAVELERS
INDEMNITY COMPANY, THE TRAVELERS
INSURANCE GROUP, INC., THE
TRAVELERS/AETNA PROPERTY CASUALTY
CORP., THE TRAVELERS GROUP, INC.,
RALPH DEAN, PAUL EILERS and RICH JONES

Gibson, Dunn & Crutcher LLP

1
2

## PETITION

3    Defendants THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS

4   INSURANCE GROUP, INC., THE TRAVELERS/AETNA PROPERTY CASUALTY

5   CORP., THE TRAVELERS GROUP, INC., RALPH DEAN, PAUL EILERS and RICH

6   JONES (collective "Defendants") petition this court, pursuant to California Court of Civil

7   Procedure § 1281.2, for an order compelling arbitration of this entire action and dismissing

8   the action.  In the alternative, defendants petition, pursuant to California Code of Civil

9   Procedure § 1281.4, for an order staying further prosecution of this action pending arbitration

10   of any claims deemed arbitrable by this court.

11       This Petition is based upon the following grounds:

12       1.      Plaintiff's claims in this lawsuit allege the existence of an employment

13   agreement with The Travelers, arising in whole or in part out of The Travelers' personnel

14   policies.  Because those policies contain a binding arbitration policy for all claims arising out

15   of employment with The Travelers, plaintiff's claims are subject to binding arbitration,

16   pursuant to the arbitration policy and California Code of Civil Procedure § 1281.2.

17       2.      Alternatively, The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, provides

18   for enforcement of arbitration clauses in written contracts involving interstate commerce.

19       3.      All of plaintiff's claims, including plaintiff's claims for discrimination, are

20   subject to arbitration pursuant to The Travelers' binding arbitration policy.

21       4.      Although individual defendants Dean, Eilers and Jones are not parties to any

22   alleged employment agreement, any order compelling arbitration must cover all of the

23   ///

24   ///

25   ///

26   ///

27   ///

28

3

Gibson, Dunn & Crutcher LLP

1  individual defendants because plaintiff's dispute arises out of his employment, and the

2  termination of his employment, and is subject to arbitration.

3  DATED:  March 6, 1997                    GIBSON, DUNN & CRUTCHER LLP

4

5                                              By: _____

6                                                          Susan B. Burr

7                                              Attorneys for Defendants THE TRAVELERS
                                               INDEMNITY COMPANY, THE TRAVELERS
8                                              INSURANCE GROUP, INC., THE
                                               TRAVELERS/AETNA PROPERTY CASUALTY
9                                              CORP., THE TRAVELERS GROUP, INC.,
                                               RALPH DEAN, PAUL EILERS and RICH JONES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND .................................................................... 1

III. PLAINTIFF'S CLAIMS IN THIS ACTION SHOULD BE ORDERED TO
ARBITRATION ......................................................................................... 3

    A. Section 1281.2 Of The California Code Of Civil Procedure
    Enforces Contractual Arbitration Provisions Such As The
    One At Issue ......................................................................................... 3

    B. Alternatively, The Federal Arbitration Act Enforces
    Contractual Arbitration Provisions Such As The One At
    Issue ..................................................................................................... 5

    C. The Travelers Inc. Employment Arbitration Policy Requires
    Plaintiff To Submit His Dispute With The Travelers To
    Final And Binding Arbitration ............................................................ 6

    D. All of Plaintiff's Claims Including His Statutory Discrimination
    Claim Are Subject to Arbitration ..................................................... 10

IV. THE ORDER OF ARBITRATION MUST APPLY TO THE INDIVIDUAL
DEFENDANTS ........................................................................................ 12

V. THIS ACTION SHOULD BE STAYED  PENDING THE OUTCOME OF
ARBITRATION ....................................................................................... 12

VI. CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

Page

Crawford v. West Jersey Health Systems,
   847 F. Supp. 1232 (D.N.J. 1994) ................................................................6

Delaney v. Continental Airlines Corp.,
   1993 U.S. Dist. LEXIS 9868 (C. D. Cal. 1993) .........................................5,7,9

Ericksen, Abuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street,
   35 Cal. 3d 312, 197 Cal. Rptr. 581 (1983) ....................................................5

Francis v. Marshall,
   661 F. Supp. 773 (D. Mass. 1987) .............................................................12

Fregara v. Jet Aviation Business Jets, et al.,
   764 F. Supp. 940 (D.N.J. 1991) .................................................................9

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20, 111 S. Ct. 1647 (1991) .....................................................6,10,11

Izzy v. Mesquite Country Club,
   186 Cal. App. 3d 1309, 231 Cal. Rptr. 315 (1986) .........................................4

Lang v. Burlington Northern Railroad Company,
   835 F. Supp. 1104 (D. Minn. 1993) ............................................................7

Lewsadder v. Mitchum, Jones & Templeton, Inc.,
   36 Cal. App. 3d 255 (1973) ...................................................................12,13

Madden v. Kaiser Foundation Hospitals,
   17 Cal. 3d 699 (1976) ............................................................................4

Miller Brewing Co. v. Brewery Workers Local Union No. 9,
   739 F.2d 1159 (7th Cir. 1984) ..................................................................6

Perry v. Thomas,
   482 U.S. 483 (1987) ..............................................................................5

Prudential Ins. Co. v. Lai,
   42 F.3d 1299 (9th Cir. 1994) ...................................................................15

Shearson/American Express, Inc. v. McMahon,
   482 U.S. 220 (1987) ..............................................................................5

Southland Corp. v. Keating,
   465 U.S. 1 (1984) ................................................................................5

Spellman v. Securities Annuities & Insurance Services, Inc.,
   8 Cal. App. 4th 452 (1992) ...................................................................6,11

Strauch v. Eyring,
   30 Cal. App. 4th 181 (1994) ....................................................................5

*Takahashi v. Board of Education,*
202 Cal. App. 3d 1464 (1988) ...........................................................................................11

*United Transp. Union v. Southern California Rapid Transit Dist.,*
7 Cal. App. 4th 804 (1992) ..................................................................................................4

*Weeks v. Crow,*
113 Cal. App. 3d 350 (1980) ..............................................................................................4

*Willis v. Dean Witter Reynolds, Inc.,*
948 F.2d 305 (6th Cir. 1991) ..............................................................................................6

## STATUTES

California Code of Civil Procedure § 1281.2 .............................................................................4

California Code of Civil Procedure § 1281.4 ...........................................................................13

California Labor Code § 1198.5 ...............................................................................................7

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14 ...........................................................5

9 U.S.C. § 1 ..............................................................................................................................6

9 U.S.C. § 2 ..............................................................................................................................5

ii

Gibson, Dunn & Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In this action for wrongful termination, plaintiff Anthony Allenza ("plaintiff") alleges that he was a party to an employment contract with The Travelers, and that such contract included The Travelers "written . . . personnel policies and discipline procedures . . . ." First Amended Complaint ("Complaint") ¶ 18. Plaintiff alleges that The Travelers breached this employment contract by wrongfully terminating his employment without good cause and without regard to or compliance with the alleged employment agreement. Complaint ¶ 21.

The written personnel policies to which plaintiff refers, and to which plaintiff seeks to bind The Travelers in this action, contain express dispute resolution procedures, including a binding arbitration process, for resolution of any "employment-related" disputes or concerns between the employee and The Travelers. *See*, Declaration of Richard A. Fortier ("Fortier Declaration"), ¶ 2 and Exhibit A. By filing this action for breach of the alleged personnel policies and ignoring the arbitration provisions contained therein, plaintiff seeks "selective enforcement" of the personnel policies which allegedly form the basis for his employment contract with Travelers. Plaintiff's dispute over his termination is subject to the binding arbitration procedure contained in his employee handbook, and his claims may not be entertained in this action.

## II.

## FACTUAL BACKGROUND

In 1994, The Travelers Insurance Group, Inc. (hereinafter "Travelers" or the "Company") restructured its approach to resolving employee concerns by implementing a revised and more extensive dispute resolution policy. The policy consisted of two principal components -- a new internal dispute resolution procedure ("IDR"), replacing an existing "grievance procedure," and a new alternative dispute resolution component, consisting of a binding arbitration process conducted by outside, neutral arbitrators of the American

1  Arbitration Association ("AAA") (The Travelers Employment Arbitration Policy, hereinafter

2  referred to as the "Policy"). (Fortier Declaration, ¶ 2 and Exhibit A)

3      Prior to its distribution to all Travelers employees, advance information about the

4  policies was distributed to officers and managers of the company. On June 29, 1994, copies

5  of the policies, along with an explanatory memorandum from Thomas E. Helfrich, Senior

6  Vice President of Human Resources, was distributed to all Senior Vice Presidents, Vice

7  Presidents and Field Committee Chairs within the Company. The memorandum described the

8  IDR and ADR process, explained the process by which employees would be notified of the

9  policy, and explained that the complaint resolution process was a condition of employment

10 for all Travelers employees. (Fortier Declaration, ¶ 3 and Exhibit B)

11     On July 7, 1994, a memorandum was sent to all Travelers Insurance Corporation

12 Managers, including managers at the level of plaintiff Anthony Allenza, regarding the new

13 IDR and ADR procedures. The memorandum explained that employee concerns that moved

14 beyond normal manager/employee discussions would be resolved through the sequential and

15 structured management review IDR process, and that concerns that remained unresolved

16 following that process would be submitted to impartial, binding arbitration. Managers were

17 notified that the IDR and ADR procedures would be included in the newly-revised Employee

18 Handbook scheduled for distribution to all employees in mid-July. Managers were also

19 informed that the Human Resources representatives had copies of the materials and were

20 available to answer any questions and to schedule training. (Fortier Declaration, ¶ 4 and

21 Exhibit C )

22     On July 22, 1994, a letter went out to all Travelers Insurance Company employees,

23 again including Mr. Allenza, notifying them of the revisions to the existing IDR procedures,

24 and the adoption of the binding arbitration process. Employees were notified that the

25 procedures would be contained in the updated Employee Handbook that they would soon be

26 receiving, and the letter described the procedures in more general terms in the notice. (Fortier

27 Declaration, ¶ 5 and Exhibit D)

28

PETITION TO COMPEL ARBITRATION                                    2
FA970520.103

Gibson, Dunn & Crutcher LLP

1   All employees were sent an updated Employee Handbook in late July 1994, containing

2   the IDR procedures along with the Employment Arbitration Policy.  Since that date, all new

3   employees of the defendant corporations named in this action have been notified of the Policy

4   at the time they receive a formal offer of employment.  (Fortier Declaration, ¶ 6)

5   The Policy "*makes arbitration the required and exclusive forum for the resolution of*

6   *all employment disputes that may arise* (and which are not resolved by the internal dispute

7   resolution procedure)," and expressly includes claims for discrimination under federal or state

8   statutes, claims arising under common law doctrine, and all claims regarding the conditions of

9   employment or termination of employment.

10  Plaintiff's complaint herein arises exclusively from his employment with The Travelers

11  and his termination from employment.  Plaintiff alleges that he was wrongfully terminated

12  from his employment, that he was subjected to arbitrary, unfair, and dishonest criticism, that

13  he was placed on oral and written probation without adequate reason, and that he was given

14  an unsatisfactory performance evaluation in December 1994 without adequate reason.

15  Complaint ¶¶ 20, 21.  These allegations, along with other similar complaints about his

16  treatment, are repeated throughout plaintiff's Complaint.

17  Clearly, what plaintiff complains of concerns the terms and conditions of his

18  employment, and the termination of his employment.  As such, there is no doubt that

19  plaintiff's "dispute" with The Travelers is subject to arbitration under the express arbitration

20  provision set forth above and contained in the "personnel policies" upon which plaintiff's

21  complaint relies.

### III.

### PLAINTIFF'S CLAIMS IN THIS ACTION

### SHOULD BE ORDERED TO ARBITRATION

**A.    Section 1281.2 Of The California Code Of Civil Procedure Enforces**

**Contractual Arbitration Provisions Such As The One At Issue**

27  California Code of Civil Procedure § 1281.2 mandates an order of arbitration when, as

28  here, a written arbitration agreement exists between the parties:

PETITION TO COMPEL ARBITRATION                                                    3
FA970520.103

Gibson, Dunn & Crutcher LLP

> On petition of a party to an arbitration agreement alleging the
> existence of a written agreement to arbitrate a controversy and
> that a party thereto refuses to arbitrate such controversy, *the court
> shall order the petitioner and respondent to arbitrate the
> controversy* if it determines that an agreement to arbitrate the
> controversy exists.

Cal. Civ. Proc. Code § 1281.2 (emphasis added).

If the dispute in question is one which the parties have agreed to arbitrate, a court *must compel arbitration* under the mandatory language of Section 1281.2. "[B]ecause arbitration is a favored method of dispute resolution, arbitration agreements should be liberally interpreted." *Weeks v. Crow*, 113 Cal. App. 3d 350, 353 (1980). Under this liberal standard, "arbitration should be ordered unless the agreement *clearly* does not apply to the dispute in question." *Id.* (emphasis added). Here, there is no question that the arbitration clause applies to plaintiff's claims.

California courts have consistently held that arbitration is a highly favored method of dispute resolution and that agreements to arbitrate should be liberally interpreted and enforced. *See, e.g., Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699, 706-07 (1976) (Arbitration is an "expeditious and economical method of relieving overburdened civil calendars"); *Izzy v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1315, 231 Cal. Rptr. 315 (1986) ("Arbitration is a favored method of dispute resolution and agreements to arbitrate are liberally interpreted"). Furthermore, any "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." *United Transp. Union v. Southern California Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992); *Ericksen, Abuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323, 197 Cal. Rptr. 581 (1983). *See also Delaney v. Continental Airlines Corp.*, 1993 U.S. Dist. LEXIS 9868 (C. D. Cal. 1993), citing *Knass v. Blue Cross of California*, 228 Cal. App. 3d 390 (1991), review denied, 1991 Cal. LEXIS 2259 (Cal. 1991) ("It is the 'policy of the law . . . to favor arbitration as a means of providing a summary disposition of controversies, [and] every reasonable intendment is indulged to give effect to such proceedings.'") (citing 6 Cal.Jur.3d Arbitration and Award, § 1, pp. 11-12)

In this context, Plaintiff's arbitration agreement establishes an efficient and cost effective means for Travelers to settle employment disputes including disputes regarding termination of employment. *Strauch v. Eyring*, 30 Cal.App.4th 181, 186 (1994) (recognizing California's "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution").

**B.    Alternatively, The Federal Arbitration Act Enforces Contractual Arbitration Provisions Such As The One At Issue**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, provides for enforcement of arbitration clauses in written contracts involving interstate commerce:

> A written provision . . . to settle by arbitration a controversy
> thereafter arising out of such contract or transaction . . . shall be
> valid, irrevocable, and enforceable . . . .

9 U.S.C. § 2. "Congress inten[ded] to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). State courts have concurrent jurisdiction to compel arbitration under the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984). The FAA establishes a clear "federal policy favoring arbitration . . . requiring that we rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In the present case, the FAA applies to Plaintiff's alleged employment agreement because Travelers is an employer engaged in interstate commerce. (*See* Fortier Declaration, ¶ 7)

The fact that the alleged contract is an employment agreement does not remove the contract from the scope of the FAA. The FAA specifically excludes from coverage only "contracts of employment of seamen, railroad employees or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Courts have split on whether the exclusion should be limited to workers employed in transportation industries, as is suggested by the reference to "seamen" and "railroad employees," or instead should apply to any employment contracts. *Compare Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985) (citing cases from

Second, Third and Seventh Circuits holding that the exception applies only to transportation workers) *with Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 311-12 (6th Cir. 1991) (stating in dicta that the clause excludes from coverage all employment contracts). The United States Supreme Court expressly left this issue open in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647, 1651, n.2 (1991) ("We leave for another day" the issue of whether that clause "excludes from the coverage of the FAA *all* 'contracts of employment.'") In leaving the issue open, the Supreme Court reiterated its "current strong endorsement of the federal statutes favoring [arbitration as a] method of resolving disputes." *Gilmer*, 111 S. Ct. at 1654.

Since *Gilmer*, a number of courts have held that arbitration of disputes involving employment contracts may be compelled under the FAA. In *Spellman v. Securities Annuities & Insurance Services, Inc.*, 8 Cal. App. 4th 452, 460 (1992), the Court of Appeal held that an employee's claim of race discrimination had to be arbitrated pursuant to the employee's written arbitration agreement and securities registration form. The court noted that the First, Second, Third and Seventh Circuits limit the FAA Section 1 exception to transportation workers and cited the "strong national policy favoring arbitration" as a means of settling private disputes. *Id. See also Crawford v. West Jersey Health Systems*, 847 F. Supp. 1232 (D.N.J. 1994) (employee's discrimination claims must be arbitrated pursuant to arbitration clause in employment contract; exception in FAA applies only to employment contracts of transportation workers); *Lang v. Burlington Northern Railroad Company*, 835 F. Supp. 1104 (D. Minn. 1993) (employee's wrongful termination claim must be arbitrated pursuant to written arbitration provision). Here, as in *Spellman*, plaintiff's claims must be arbitrated pursuant to the written arbitration provision set forth in The Traveler' personnel policies.

**C.    The Travelers Inc. Employment Arbitration Policy Requires Plaintiff To Submit His Dispute With The Travelers To Final And Binding Arbitration**

In *Delaney v. Continental Airlines Corp.*, 1993 U.S. Dist. LEXIS 9868 (C.D. Cal. 1993), the court held that an arbitration provision contained in an employee manual applied to all of the plaintiff's claims for wrongful termination, and dismissed plaintiff's entire lawsuit,

1  including claims for breach of contract, breach of the implied covenant of good faith and fair

2  dealing, fraud and violation of California Labor Code § 1198.5.  Despite the plaintiff's

3  contention in *Delaney* that the arbitration agreement constituted a "contract of adhesion," the

4  court upheld the procedure as fair and as "final and binding" on the employee and

5  Continental.

6       The court dismissed all of plaintiff's claims on the grounds that plaintiff was compelled

7  to submit his dispute to arbitration under Continental's employment regulations.  Rejecting

8  plaintiff's argument that the arbitration procedure was "imposed upon him" because it was

9  contained in Continental's employment manual and was therefore a contract of adhesion, the

10  court concluded that even if the manual were a contract of adhesion, the agreement is

11  enforceable unless (1) it is contrary to the reasonable expectations of the parties or (2) it is

12  "unduly oppressive or 'unconscionable.'"  *Id.* at 6, citing *Graham v. Scissor-Tail, Inc.,* 28

13  Cal.3d 807 (1981).

14       The plaintiff in *Delaney* argued that Continental's arbitration procedure, which

15  provided for a hearing before a three-member board consisting entirely of officers of the

16  company, was "inherently biased" in favor of Continental and therefore unduly oppressive

17  and unenforceable under the *Graham v. Scissor-Tail* standard.  The court disagreed,

18  ". . . there is no showing that Continental's arbitration process was either contrary to the

19  reasonable expectations of the parties or was "unduly oppressive."  1993 U.S. Dist.

20  LEXIS 9868, 8.

21       In this case, plaintiff would be hard-pressed to argue that the procedure contained in

22  the Policy is "inherently biased" or unfair to him.  First, the Policy provides for arbitration by

23  the American Arbitration Association ("AAA") and a neutral, outside arbitrator.  Moreover,

24  the Policy generally follows the rules and procedures of the Employment Dispute Resolution

25  Rules of the AAA, with some modifications, and includes numerous provisions, including the

26  following, to ensure fair and impartial proceedings as well as speedy and economical

27  resolution of employee disputes:

28

- Payment by The Travelers of all administrative fees of the arbitration, including the cost of the arbitrator, in excess of $25.00.

- Appointment of a neutral arbitrator by the AAA (not by The Travelers), and either party may request a panel of three arbitrators be appointed.

- Parties are permitted to cross off any names of AAA arbitrators to whom they object, and may number the remaining arbitrators in order of their preference.

- Parties are entitled to be represented by counsel of their choosing, and if the employee does not choose to be represented, The Travelers agrees to waive its right to counsel.

- Discovery is permitted, including a set of interrogatories to identify witnesses, a set of requests for production of documents, and two days of depositions of witnesses or parties.

- The arbitrator must make any award promptly, within 30 days of the hearing, and the award can consist of money damages for any direct injury the arbitrator determines the party has suffered, as well as reinstatement if money damages are deemed insufficient.

(*See,* Fortier Declaration, Exhibit A)

In short, the Policy provides ample protections to employees to ensure a fair, impartial and speedy resolution of their employment disputes.  The Travelers employees are clearly and explicitly notified of the grievance and arbitration procedures, are given written information regarding the provisions in complete detail, and are encouraged to ask their Manager, Human Resources Representative or Employee Relations department if they have any questions concerning the process.  (Fortier Declaration, ¶ 3)

Moreover, by basing his claims for wrongful termination on an alleged employment contract, and asserting that the contract is evidenced in part defendant's personnel policies, plaintiff is estopped to deny that the arbitration provision, contained in those very same personnel policies, is not part of his employment "contract" with defendant.

1   In *Fregara v. Jet Aviation Business Jets, et al.*, 764 F.Supp. 940 (D.N.J. 1991), a case

2   relied upon by *Delaney v. Continental Airlines Corp., supra,* the court granted the employer's

3   motion for summary judgment, dismissing all of plaintiff's claims for breach of contract,

4   breach of the covenant of good faith and fair dealing, conspiracy and intentional infliction of

5   emotional distress. The court held that plaintiff's claims for breach of contract, which were

6   based upon the allegation that the company's employee handbook constituted an employment

7   contract, were subject to the grievance and arbitration provision contained in the handbook:

8
            If the plaintiff seeks to rely on provisions in the employee
9           handbook as the source of an implied contract of employment,
            then he must accept that agreement as a whole with its attendant
10          responsibilities. Plaintiff cannot seek to enforce his rights under
            the agreement while avoiding his responsibilities. In short,
11          plaintiff must accept his obligations along with his rights as in any
12          agreement.

13  764 F.Supp. at 951. The court dismissed plaintiff's claims for breach of contract, concluding

14  that

15          Plaintiff can not selectively determine which aspects of the
            contract are binding. If the provisions governing job security are
16          binding, then so too is the language concerning utilization of the
17          grievance procedures. Since plaintiff failed to invoke, much less
            exhaust, the final and binding relevance procedure established in
18          the handbook, which he claims was binding upon the parties,
            defendants' motion for summary judgment on plaintiff's second
19          and fourth claims for breach of contract is GRANTED.

20  *Id.* at 953. The court then went on to hold that plaintiff's claims for breach of the implied

21  covenant of good faith and fair dealing, which could have been adjudicated under the dispute

22  resolution procedures contained in the handbook, was also barred. *Id.* at 954.

23      Similarly, plaintiff cannot selectively decide that only some parts of his purported

24  employment "contract" with defendant are binding but the arbitration provision is not.

25

26

27

28

Gibson, Dunn & Crutcher LLP

## D.    All of Plaintiff's Claims Including His Statutory Discrimination Claim Are

## Subject to Arbitration

The Travelers Employment Arbitration Policy clearly and unequivocally sets forth the broad variety of claims that may be submitted to arbitration:

> The Policy makes arbitration the required, and exclusive, forum for the resolution of *all employment disputes that may arise* (and which are not resolved by the internal dispute resolution procedure), including claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and all amendments thereto, and any other federal, state or local statute, regulation or common law doctrine, *regarding employment discrimination, conditions of employment or termination of employment.*

(*See,* Fortier Declaration, Exhibit A)

As can be seen, the Policy also makes explicit the fact that claims for discrimination, including statutory claims, are subject to arbitration. Both federal and California law recognize that where the parties have agreed to submit such disputes to arbitration, claims alleging discrimination are subject to the agreement to arbitrate employment disputes.

The United States Supreme Court, in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647 (1991) held that employees may contractually agree to arbitrate employment disputes, including statutory claims under the federal Age Discrimination in Employment Act ("ADEA"). In *Gilmer,* the plaintiff was a registered securities representative with several stock exchanges, including the NYSE, and had signed a Form U-4 (Uniform Application for Securities Industry Registration) containing a provision agreeing to arbitrate "any dispute, claim or controversy . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations" with which the representative was registered. The NYSE arbitration rules provided for arbitration in the following manner:

> Any controversy between a registered representative and any member or member organization arising out of the employment or

> termination of employment of such registered representative by
> and with such member or member organization shall be settled by
> arbitration, at the instance of any such party, in accordance with
> the arbitration procedure prescribed elsewhere in these rules.

The Court held that nothing in the legislative history of the ADEA explicitly precluded arbitration. 500 U.S. at 26.

California has also addressed this issue head-on. In *Spellman v. Securities, Annuities & Ins. Services, Inc.*, 8 Cal.App.4th 452 (1992), the court of appeal ruled that state discrimination claims are arbitrable. The court reasoned:

> *Gilmer* . . . stand[s] for the proposition that important social
> policies and public rights embodied in statutes prohibiting
> discrimination in employment can be appropriately resolved by
> arbitration. The Supreme Court has determined that the
> arbitration forum provides sufficient procedural safeguards and
> mechanisms for discovery "to make the process suitable for
> discrimination claims" under such statutes.

*Id.* at 462.[1] *See also, Takahashi v. Board of Education*, 202 Cal.App.3d 1464 (1988), *cert. denied*, 490 U.S. 1011 (1989) (previously unasserted statutory discrimination claim precluded by court-affirmed administrative determination that plaintiff had been discharged for cause).

Here, the language of the Travelers Inc. Employment Arbitration Policy is even more explicit in its applicability to claims of employment discrimination than the policies at issue in *Gilmer* and *Spellman*. Thus, the Policy makes clear that arbitration is the required and exclusive forum for "*all* employment disputes that may arise . . . *including claims, demands or actions under . . . the Age Discrimination in Employment Act . . .* and any other federal, state or local statute, regulation or common law doctrine, *regarding employment discrimination, conditions of employment or termination of employment*." Plaintiff asserts that The Travelers discriminated against him on the basis of his age when it selected him for layoff in May 1995. The law is clear that plaintiff's claims for age discrimination, along with

---

[1]  Additionally, the Ninth Circuit has extended *Gilmer* to employment discrimination claims brought under Title VII, finding that employees may agree to arbitrate employment claims. *See generally, Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994), *cert. denied*, 116 S.Ct. 61 (1995).

1  his remaining claims for wrongful termination, are subject to arbitration under the terms of

2  the Travelers Inc. Employment Arbitration Policy.

3  ### IV.

4  ### THE ORDER OF ARBITRATION MUST

5  ### APPLY TO THE INDIVIDUAL DEFENDANTS

6  Although defendants Dean, Eilers and Jones[2] are not parties to any employment

7  agreement with plaintiff, any order compelling arbitration must cover all of the individual

8  defendants because the entire dispute is arbitrable.  Ordering arbitration as to all defendants is

9  appropriate given that The Travelers is a defendant on every cause of action and that its

10  liability is vicarious -- based on the doctrines of respondeat superior, authorization and

11  ratification through the alleged conduct of the individual defendants.  (Complaint, ¶ 11); *See*

12  *Francis v. Marshall*, 661 F. Supp. 773, 774-75 & n.2 (D. Mass. 1987) (compelling arbitration

13  as to all three defendants even though one of two corporate defendants was not an NASD

14  member or associated person); *Lewsadder v. Mitchum, Jones & Templeton, Inc.*, 36 Cal. App.

15  3d 255, 261 (1973) (even though individual defendant not party to arbitration clause, court

16  held that the claim is arbitrable and the action should be stayed where liability of defendants

17  is joint and several).

18  ### V.

19  ### THIS ACTION SHOULD BE STAYED

20  ### PENDING THE OUTCOME OF ARBITRATION

21  California Code of Civil Procedure Section 1281.4 expressly authorizes the Court to

22  stay an action pending arbitration:

23  > If an application has been made to court . . . for an order to
24  > arbitrate . . . the court shall . . . stay the action or proceeding until

25  _____

26  [2] Although the same argument would apply to defendant Michael J. Stone, this petition is being
    brought only on behalf of the remaining individual defendants (as well as the corporate defendant)
27  since defendant Michael J. Stone is appearing specially to contest personal jurisdiction, and has
    filed a motion to quash service of process.

28

the application for an order to arbitrate is determined, and if
arbitration of such controversy is ordered, until an arbitration is
had in accordance with the order to arbitrate . . .

Accordingly, if the Court compels arbitration of Plaintiff's claims, this entire action should be stayed as to all claims and parties pending the outcome of arbitration. *See Lewsadder, supra,* 36 Cal. App. 3d at 261 (staying action even though one of two defendants was not a member of securities organization where claim against both defendants alleged joint and several liability).

## VI.

## CONCLUSION

For all of the foregoing reasons, defendants request this Court grant their Petition to Compel Arbitration of plaintiff's claims in accordance with the express written agreement of the parties and dismiss plaintiff's claims in this action, or, in the alternative, order a stay of this civil action pending arbitration.

DATED:  March 6, 1997                GIBSON, DUNN & CRUTCHER LLP


By: _Susan B. Burr_
                                    Susan B. Burr

Attorneys for Defendants THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INSURANCE GROUP, INC., THE TRAVELERS/AETNA PROPERTY CASUALTY CORP., THE TRAVELERS GROUP, INC., RALPH DEAN, PAUL EILERS and RICH JONES

# EXHIBIT C

EXHIBIT C

Filed 12/12/07

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMANDA MITRI et al., | |
|     Plaintiffs and Respondents, | G038003 |
|        v. | (Super. Ct. No. 06CC03994) |
| ARNEL MANAGEMENT COMPANY et al., | O P I N I O N |
|     Defendants and Appellants. | |

        Appeal from an order of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

        Paul, Hastings, Janofsky & Walker, Michael A. Hood, Sherri Fanger McInnes and Karin K. Sherr for Defendants and Appellants.

        Law Office of Patricia Grace and Patricia J. Grace for Plaintiffs and Respondents.

## INTRODUCTION

Plaintiffs Amanda Mitri[1] and Eric Eppel (plaintiffs) sued their former employer, Arnel Management Company (Arnel), Arnel's owner, George Argyros, and Arnel supervisors Steve Mensinger, Ole Olson, and Leslie Holis (collectively defendants) for, inter alia, sexual discrimination and harassment.[2]  Defendants filed a motion to compel arbitration of plaintiffs' claims on the ground plaintiffs had each signed a binding arbitration agreement.  The trial court denied the motion based on defendants' failure to prove the existence of any such agreement to arbitrate.  Defendants contend the trial court erred by denying their motion.

We affirm.  Arnel's employee handbook states, "[a]s a condition of employment, all employees are required to sign an arbitration agreement" and further states, "[e]mployees will be provided a copy of their signed arbitration agreement."  Defendants have not produced evidence of signed arbitration agreements.  Defendants nevertheless contend the handbook's reference to arbitration is sufficient to force plaintiffs to arbitrate their claims.  As discussed in detail *post*, defendants' argument is wholly without factual or legal merit.

## BACKGROUND

Plaintiffs filed a complaint against defendants containing claims for (1) sexual discrimination and harassment, (2) failure to prevent sexual discrimination and harassment, (3) retaliation for opposing sexual discrimination and harassment, (4) invasion of privacy, and (5) defamation.  Defendants filed a motion to compel

---

[1]  Although the complaint and other documents filed in this action spell this plaintiff's last name "Metri" instead of "Mitri," documents in the record show the latter spelling is correct.

[2]  The complaint also named Merideth Katz as a defendant.  The record does not show whether Katz was ever served in this action.  Because Katz was not a moving party with regard to defendants' motion to compel the arbitration agreement, we do not further refer to her.

arbitration and stay the proceedings on the grounds:  (1) each plaintiff had entered into a written arbitration agreement with Arnel, which required binding arbitration of "any controversy or dispute arising from, or in any way relating to an offer of employment or the position, work, payment or relationship, or the termination of such employment"; and (2) the claims in the complaint "'arise from'" or are "'related to'" plaintiffs' employment.

In support of the motion, defendants submitted the declaration of Arnel's director of claims administration, Fola Linebarger, in which she stated, "[i]t is Arnel's business practice to require all employees to sign an arbitration agreement prior to or upon commencement of employment with Arnel and to maintain a signed copy of such agreement in each employee's personnel file.  I have custody of the personnel files for both Amanda Mitri and Eric Eppel, and Arnel maintains these files in the ordinary course of business.  Attached hereto as Exhibits 'A' and 'B' are true and accurate copies of the arbitration agreements that are maintained in Ms. Mitri's and Mr. Eppel's personnel file."

Exhibit A consists of two documents.  First, it contains what appears (based on the footer at the bottom of each page) to be a copy of pages 6 and 7 of the Arnel Employee Handbook, as revised on September 17, 2004.  Pages 6 and 7 contain a section entitled "1.18 Arbitration Agreement" which states:  "Any dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration. As a condition of employment, all employees are required to sign an arbitration agreement.  [¶] To ensure the expeditious and economical resolution to any controversy or dispute arising from, or in any way relating to an offer of employment or the position, work, payment or relationship, or the termination of such employment, will be on the written request by any party, be submitted to and resolved by binding arbitration.  Said arbitration will be conducted by the American Arbitration Association in Orange County, California.  The Company will share equitably such expenses associated with the arbitration process.  The prevailing party in the arbitration shall be awarded its attorney's fees incurred in the arbitration process and the decision of the arbitrator shall be final,

binding and non-appealable.  [¶] Further, nothing in this policy is intended to prevent either you or the Company from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration.  You, as the employee and the Company each have the right to resolve any issue or dispute involving company trade secrets, invention rights, non-competition and non-solicitation by court action in lieu of arbitration.  [¶] Employees will be provided a copy of their signed arbitration agreement." There is no "signed arbitration agreement" in the exhibit.

Exhibit A also contains a document entitled "Acknowledgment Receipt [¶] *Employee Handbook*" which states:  "This Employee Handbook is designed to acquaint new employees, and reacquaint existing employees, with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment.  The Handbook is an excellent resource for employees with questions about the Company.  Employees are encouraged to carefully review the Employee Handbook and become familiar with the contents and periodic updates.  [¶] The Company reserves the right to change or revise policies, procedures, and benefits described in this Handbook, other than the employment at-will provisions, without notice, at such times that the Company determines this action is warranted.  [¶] My signature acknowledges that I have read and understood the statements above as well as the contents of the Handbook, and will direct any questions to my supervisor or the Director of Human Resources."  The acknowledgment receipt form in exhibit A was signed by Mitri and dated October 14, 2004.

Exhibit B to Linebarger's declaration contains identical documents to those in exhibit A, but the acknowledgment receipt form in exhibit B was signed by Eppel and dated October 18, 2004.  As with exhibit A, there is no "signed arbitration agreement" in exhibit B.  Defendants requested that the trial court take judicial notice of the rules of the American Arbitration Association.  Defendants did not submit any other evidence showing the existence of a mandatory arbitration agreement.

4

In opposition, plaintiffs each filed a declaration, in which they denied entering into an arbitration agreement with Arnel or ever being asked to do so. Both admitted "signing a receipt for the Arnel Management Company's Policy Handbook," but each stated, "I was not asked to read, nor was I given time to read, the Arnel Management Company's Policy Handbook and I did not know its contents."

The trial court issued the following tentative ruling before argument on defendants' motion: "The court is inclined to DENY this motion. The acknowledgment and receipt does not specifically cite the arbitration provision. Further, the handbook is not part of the contract of employment, because the policies in the handbook, including the arbitration provision, can be changed or revised without notice whenever the company determines it is warranted. The employee does not have reciprocal rights to amend the handbook. [¶] Still further, the acknowledgment states that the employee has 'read and understood' the statements in the acknowledgment, which 'encourage the employee to carefully review . . . and become familiar with' the employee handbook. This implies that the review will take place after the receipt is signed. That can hardly be the basis for a binding election to arbitrate. [¶] The court recognizes that the acknowledgment also says that the employee has 'read and understood the statements above *as well as the contents of the Handbook*.' The court finds this to be ambiguous under the circumstances. Even if this is a promise that the employee read the handbook before signing (which is unclear), the declarations of the plaintiffs indicate that, in fact, they did not read the handbook before signing. Further, even if they *had* read the handbook, the handbook did not constitute an agreed term of the contract of employment."

Following argument on the motion, the trial court's tentative ruling became the final order of the court. Defendants timely appealed.

DISCUSSION

The trial court's order denying defendants' motion to compel arbitration is appealable pursuant to Code of Civil Procedure section 1294, subdivision (a).[3] (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1711.)

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine *whether the agreement exists* and, if any defense to its enforcement is raised, whether it is enforceable. *Because the existence of the agreement is a statutory prerequisite to granting the petition*, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413, italics added.)

Defendants contend the trial court erred by denying their motion to compel arbitration because the written documentation they submitted established the existence of a binding arbitration agreement between each plaintiff and Arnel. The "'[i]nterpretation of a written document where extrinsic evidence is unnecessary is a question of law for independent review by the Court of Appeal. [Citations.]'" (*Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1158; see also *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.) We therefore review this issue de novo.

California contract law applies to determine whether the parties formed a valid agreement to arbitrate. (*Romo v. Y-3 Holdings, Inc., supra,* 87 Cal.App.4th at pp. 1158-1159; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420 ["General principles of contract law determine whether the parties have entered a binding agreement to arbitrate"].) General contract law principles include that "[t]he basic goal

---

[3] Code of Civil Procedure section 1294, subdivision (a) provides: "An aggrieved party may appeal from:  [¶] (a) An order dismissing or denying a petition to compel arbitration."

of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.'  [Citations.]"  (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.)  Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  (Civ. Code, § 1641.)

Section 1550, subdivision 2, of the Civil Code establishes the rule that an essential component to a contract is the consent of the parties to the contract.  (See *Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 1230.)  Civil Code section 1565, subdivision 3 provides, "[t]he consent of the parties to a contract must be . . . [¶] . . . [¶] . . . [c]ommunicated by each to the other."  (See *Romo v. Y-3 Holdings, Inc., supra,* 87 Cal.App.4th at p. 1158 ["'There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate'"].)

Here, the documents submitted by defendants do not show either plaintiff ever consented to binding arbitration of claims arising out of the employment relationship with Arnel.  The arbitration agreement provision in the employee handbook generally states an Arnel policy that "[a]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration."  The provision explains such an arbitration "will be conducted by the American Arbitration Association," and describes some of the parameters of such an arbitration (e.g., written request triggers arbitration, Arnel agrees to "equitably" share arbitration expenses, and prevailing party is awarded attorney fees).  The arbitration agreement provision, however, does not stop there.  It also states that pursuant to Arnel's policy, "[a]s a condition of employment, all employees are required to sign an arbitration agreement."  This provision completely undermines any argument by defendants the provision in the handbook itself was intended to constitute an arbitration agreement between Arnel and its employees.  The provision further states,

"[e]mployees will be provided a copy of their signed arbitration agreement"—thus reinforcing an intent to have employees sign a separate arbitration agreement to effectuate Arnel's policy of arbitrating employment claims. Defendants have not produced any evidence of the existence of such an arbitration agreement signed by either plaintiff.

Defendants cite *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 (*Asmus*) and *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 637, for the proposition that "[i]n order [to] establish that [plaintiffs] assented to the arbitration agreement, it is only necessary for [defendants] to show that [plaintiffs] received a copy of the agreement and that [plaintiffs] continued to work after they received a copy of the agreement." Significantly, however, neither *Asmus* nor *DiGiacinto v. Ameriko-Omserv Corp.* addressed whether an arbitration agreement *existed* between an employer and employee.

*Asmus, supra,* 23 Cal.4th 1 arose in the context of an employer's discontinuance of a management employment security policy but did not involve an arbitration agreement. In *Asmus*, the California Supreme Court addressed the issue whether "'[o]nce an employer's unilaterally adopted policy—which requires employees to be retained so long as a specified condition does not occur—has become a part of the employment contract, may the employer thereafter unilaterally [terminate] the policy, even though the specified condition has not occurred?'" (*Id.* at pp. 5-6, fn. omitted.) In holding an employer could do so, the Supreme Court recognized that "California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." (*Id.* at p. 11.) In *Asmus*, both parties agreed that the employees had accepted a unilateral contract by their performance. (*Ibid.*) Thus, the question in *Asmus* was whether the unilateral contract, once formed, could be unilaterally modified or terminated by the employer. (*Ibid.*)

8

In contrast, the core issue in this case, as framed by the motion to compel arbitration, is whether the documents prepared by Arnel show an express *bilateral* contract was entered into through which the parties agreed to arbitrate.  As discussed *ante*, the documents do not.  At oral argument on appeal, defendants argued plaintiffs accepted a unilateral contract to arbitrate by continuing to work for Arnel after their receipt of the employee handbook.  But, as discussed *ante*, the employee handbook's arbitration provision only placed plaintiffs on notice that they would be called upon to sign a separate binding arbitration agreement, thereby contradicting defendants' argument the provision in the handbook and subsequent performance constituted a unilateral contract of binding arbitration.  Defendants' argument on appeal does not withstand legal or factual analysis and is fundamentally different from their position before the trial court.  Indeed, the reply brief in support of the motion to compel arbitration, which defendants filed in the trial court, stated, "[p]laintiffs insist that the arbitration agreements are 'unilateral[,'] and therefore unenforceable.  Not true.  The arbitration agreements are expressly *mutual*—compelling both [p]laintiffs and [d]efendants to arbitrate 'Any dispute arising out of employment with the Company[.]'"

The issue presented in *DiGiacinto v. Ameriko-Omserv Corp., supra,* 59 Cal.App.4th 629, 631, was "whether the employer of an at-will employee is liable for breach of contract when the employer notifies the employee of a prospective change in his rate of compensation and thereafter the employee continues in employment."  In concluding that an employer is not so liable, the appellate court noted, "the majority line of cases supports the proposition that as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." (*Id*. at p. 637.)

Both *Asmus, supra,* 23 Cal.4th 1 and *DiGiacinto v. Ameriko-Omserv Corp., supra,* 59 Cal.App.4th 629, are inapposite because, as discussed *ante*, the arbitration

agreement provision contained in the employee handbook here placed plaintiffs on notice that they would be required to enter into a separate arbitration agreement with Arnel. As this record shows, neither plaintiff entered into an arbitration agreement.

In their reply brief on appeal, defendants also cite *Craig v. Brown & Root, Inc., supra,* 84 Cal.App.4th 416, 420, in which the appellate court rejected an employee's contention the evidence was insufficient to show she entered a binding arbitration agreement with her employer. The court cited evidence the employer sent the employee a memorandum informing her of the employer's new dispute resolution program, emphasized "IT APPLIES TO YOU," and explained "[i]t will govern all future legal disputes between you and the Company." (*Id.* at p. 419.) Unlike the arbitration agreement provision in the Arnel Employee Handbook, the memorandum in *Craig v. Brown & Root, Inc.* established in and of itself the employer's dispute resolution program, and did not include an express requirement that its employees sign an arbitration agreement. Therefore, *Craig v. Brown & Root, Inc.* is inapposite.

Defendants also contend the signed arbitration agreement required by the arbitration agreement provision in the Arnel Employee Handbook was *impliedly* unnecessary to establish an arbitration agreement between Arnel and plaintiffs. However, such an interpretation of the arbitration agreement provision contradicts that same provision's *express* term requiring a signed agreement. (See *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 ["implied terms should never be read to vary express terms"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 855, fn. 12 ["'[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract'"].)

Defendants next argue the acknowledgment receipt form signed by each plaintiff constitutes evidence of each plaintiff's acquiescence to the arbitration agreement provision in the employee handbook. But the language of the acknowledgment receipt

10

form relegates the employee handbook's status to "an excellent resource for employees with questions about the Company," and further states the employee handbook is "designed to acquaint new employees, and reacquaint existing employees, with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment." The acknowledgment receipt form states, "[e]mployees are encouraged to carefully review the Employee Handbook and become familiar with the contents and periodic updates."

        Conspicuously absent from the acknowledgment receipt form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision. Indeed, the line preceding each plaintiff's signature on his or her respective acknowledgment receipt form explains, "[m]y signature acknowledges that I have read and understood the statements above as well as the contents of the Handbook, and will direct any questions to my supervisor or the Director of Human Resources."

        We cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties. (Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"].) Taken as a whole, the documents submitted by defendants in support of their motion do not constitute an arbitration agreement. We therefore conclude the trial court did not err by denying defendants' motion to compel arbitration. Because we conclude the documents submitted in support of defendants' motion do not constitute an agreement to arbitrate, we do not need to consider other grounds relied upon by the trial court in denying defendants' motion to compel arbitration.

11

DISPOSITION

The order is affirmed.  Respondents shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.