1  CARLTON DiSANTE & FREUDENBERGER LLP
   Robin E. Weideman, State Bar No. 197595
2  8950 Cal Center Drive
   Suite 160
3  Sacramento, California 95826
   Telephone: (916) 361-0991
4  Facsimile: (916) 361-1480
   E-Mail: rweideman@cdflaborlaw.com

Attorneys for Defendants
TRAVELERS INDEMNITY COMPANY and YVONNE GARRISON

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| EVA DENES, | Case No. C 07 4811 CW |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| v. | |
| TRAVELERS INDEMNITY COMPANY and YVONNE GARRISON, | Hearing Date: January 10, 2008 |
| Defendants. | Time: 2:00 p.m. |
| | Courtroom 2, Fourth Floor |
| | Hon. Claudia Wilken |

Plaintiff's opposition attempts to muddy the waters by raising numerous legal and factual issues aimed at challenging Defendants' right to compel arbitration in this matter. However, none of the issues raised by Plaintiff undermine the validity or binding effect of her arbitration agreement with Travelers. Contrary to Plaintiff's assertion, Travelers cannot be collaterally estopped from litigating the issue based on *different facts* in a different lawsuit. The facts of *this case* clearly establish that Plaintiff and Travelers mutually agreed to arbitrate this dispute and the agreement is <u>not</u> unconscionable. Defendants' motion should be granted in its entirety.

I.  **Travelers Is Not Collaterally Estopped From Compelling Arbitration.**

Plaintiff argues that Travelers is collaterally estopped from moving to compel arbitration in this case based on the fact that 10 years ago, a different court ruled against Travelers on a motion to compel arbitration, based on different facts. Collateral estoppel is not a bar to Travelers' motion.

Collateral estoppel, or issue preclusion, is applied only when the issue being litigated is **identical** to an issue previously litigated and decided. It is not sufficient for the issues to be merely similar. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985). "If **different facts** are in issue in a second case from those that were litigated in the first case, then the parties are not collaterally estopped from litigation in the second case." *Id.* (emphasis added.) Here, the facts before this Court are materially different than those before the court in *Allenza v. Travelers Indemnity Company*.[1] These differences preclude application of collateral estoppel.

In the *Allenza* case, the only arbitration policy at issue was the one included in Travelers 1994 employee handbook. The *Allenza* court found that the arbitration policy in Travelers 1994 employee handbook was insufficient to create a binding agreement to arbitrate because the 1994 handbook stated that it was not intended to create any contractual rights. The court relied on language on the first page of the 1994 handbook stating, "This handbook is provided for your information only. It should not be considered in any way as creating a contract or guarantee of employment nor should it be construed as creating any rights, contractual or otherwise, to continued employment benefits or working conditions between any employee and the Company."

---

[1] The *Allenza* case is an unpublished disposition that is not even available on Westlaw.

(Exh. A to Fauth Decl. ISO Plaintiff's Opposition, p.5.) Although Travelers argued that this language was intended solely to preserve at-will employment status by disclaiming any right to continued employment, the court rejected Travelers argument and instead found that the provision disclaimed any contractual right to arbitration. The court apparently construed Travelers arbitration policy as a "working condition" and thereby found that Travelers 1994 handbook specifically disclaimed any contractual right to arbitration.

Here, unlike the *Allenza* case, the 1994 employee handbook is not the only document evidencing Plaintiff's and Travelers agreement to arbitrate. Indeed, there are six additional arbitration policies at issue, and these additional policies contain provisions making clear that, contrary to the *Allenza* court's determination, arbitration *is* a contractual condition of employment. While the handbooks still contain provisions disclaiming any right to continued employment, the provisions are markedly different than the provision in the 1994 handbook, relied upon by the *Allenza* court. The subsequent provisions make clear that the disclaimer only applies to guarantees of continued employment:

> This Handbook does not constitute a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Notwithstanding any statements in this Handbook, employment at Travelers is a voluntary relationship for no definite period of time and either you or Travelers may terminate the employment relationship at any time with or without reason. No Travelers manager or other employee at the Company has the authority to make a commitment of guaranteed or continued employment to you and no Travelers publication should be understood to make any such commitment.
>
> . . .
>
> **IMPORTANT.** THIS HANDBOOK CONTAINS A PROVISION WHICH REQUIRES YOU TO SUBMIT EMPLOYMENT RELATED DISPUTES TO BINDING ARBITRATION. PLEASE READ IT CAREFULLY. NO OTHER PROVISION IN THIS HANDBOOK IS INTENDED TO CONSTITUTE A WAIVER, NOR SHOULD BE CONSTRUED AS A WAIVER, OF THE COMPANY'S RIGHT TO COMPEL ARBITRATION OF EMPLOYMENT RELATED DISPUTES.

(See Exhs. G, H and I to Bengston Decl.; emphasis in original.)

As further evidence of the contractual nature of the arbitration policy, the handbooks subsequent to the 1994 edition specify limitations on Travelers ability to modify the arbitration

policy, as opposed to other policies which Travelers reserves the right to modify without advance notice. (See Exh. E to Bengston Decl., "The information in this handbook is distributed as a matter of information only and we expressly reserve the right to change any of our policies at any time **except the Employment Arbitration Policy**, which has special provisions; Exhs. G, H, I, "The Company, for any reason, may unilaterally, in its sole discretion, create, amend, supplement, modify or eliminate any benefits, rules or policies without prior notice to employees, **except for the Employment Arbitration Policy**. The Company, for any reason, may unilaterally, in its sole discretion, create, amend, supplement, modify, or eliminate the Employment Arbitration Policy. Any such change to the Arbitration Policy shall be effective 30 days after you receive notice of such change.")

The handbooks and arbitration policies, attached as an Appendix to the handbooks, also make clear that binding arbitration of employment disputes is a condition of employment. The 2002, 2003, and 2004 handbooks expressly advise employees that, "Arbitration is an essential element of your employment relationship and is a condition of employment." (Exh. G, p. 5; Exh. H, p. 4, Exh. I, p. 4.) Following the merger of Travelers and St. Paul in 2004, all employees, including Plaintiff, were further notified by e-mail that the Travelers Employment Arbitration Policy, among others, would remain in effect notwithstanding the merger and that "It is your responsibility to read and understand all of our company policies. Your agreement to abide by these policies is an **express condition of your continued employment** with the St. Paul Travelers Companies." (Exh. I to Bengston Decl., emphasis added.)

In addition, the arbitration policies distributed from 1996 forward also make clear that both Travelers and its employees, including Plaintiff, are mutually bound to arbitrate disputes. "The Policy makes arbitration the required, and exclusive, forum for resolution of all employment disputes . . . that may arise between an employee or former employee and Travelers." The policies also specify that the result of the arbitration is "final and binding on the employee and Travelers." (Exhs. C, E, F, G, H, I, K to Bengston Decl.). Finally, the 2001-2005 policies specifically emphasize that, "Nothing in this provision shall be construed to negate the mutuality of this agreement to arbitrate, and Travelers explicitly agrees to arbitrate, pursuant to this Policy, any

disputed disciplinary action after it has been taken." (Exhs. G, H, I to Bengston Decl., Employment Arbitration Policy.)

The foregoing makes clear that there are numerous writings at issue in this case that were not considered (and were not even in existence) in the Allenza case and thus had no bearing on that court's unpublished determination that Travelers did not establish a valid arbitration agreement with Allenza. Indeed, the disclaimer language relied upon by the Allenza court was materially revised in Travelers subsequent policies, eliminating any doubt as to whether the disclaimer was intended to disclaim a contractual right to arbitration. The documents and policies before the Court *here* contain provisions making crystal clear that Travelers and its employees, including Plaintiff, had a mutually binding agreement to arbitrate. Because the Allenza case rests on different facts than those before this Court, Travelers is not collaterally estopped by virtue of that 10-year old case from compelling arbitration in this matter.

## II. Plaintiff Agreed to Arbitrate Any Employment Disputes With Travelers.

Notwithstanding the fact that on approximately 11 different occasions between 1994 and 2005, Plaintiff received writings alerting her to the fact that Travelers had a mandatory arbitration policy she was required to follow as a condition of employment, Plaintiff remarkably claims that she never "read" any of these documents and that they cannot constitute a contractual agreement to arbitrate (1) based on language in the handbooks disclaiming certain contractual rights, and (2) because there is no evidence that Plaintiff agreed to the arbitration policy.[2] Neither argument has merit.

---

[2] Plaintiff also claims that Travelers should have filed the entirety of the 1994-2005 handbooks. Given that each handbook is approximately 70 pages in length and the majority of the handbook is wholly irrelevant to the issue before the Court, Travelers did not submit the entire handbooks in an effort to conserve resources. In addition, the 2005 Arbitration Policy (the last policy Plaintiff received) was a stand-alone policy that was not included in Travelers employee handbook. This policy alone is sufficient to create a contractual agreement to arbitrate, which Plaintiff accepted by continuing to work at Travelers after being repeatedly notified, over a ten-year period, that her agreement to binding arbitration was a condition of her employment. In any event, Travelers is willing to produce the entirety of the handbooks referenced in this motion if the Court deems it necessary for resolution of this motion. Travelers cannot conceive of any further need for "discovery" pertaining to this motion, contrary to Plaintiff's request for such discovery. This request should be denied.

---

283209.1

4

Case No. C 07 4811 CW
DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

A.  **Travelers Arbitration Policies Constitute a Contractual Agreement to Arbitrate.**

Plaintiff argues that language in the employee handbooks disclaiming any contractual right to continued employment or other benefits of employment precludes a finding that the arbitration policy is contractual. This is the same argument Plaintiff makes with respect to the Allenza case. As discussed above, the Allenza case is inapposite as the revised versions of the handbooks and arbitration policies subsequent to 1994 make clear that the disclaimer is intended to preserve the at-will employment relationship and that neither the disclaimer, nor any other provision, constitutes or should be interpreted as a waiver of the right to compel arbitration. (See Section I, above.)

B.  **There Is Ample Evidence That Plaintiff Agreed to and Accepted the Arbitration Policy.**

Plaintiff disingenuously claims that because she allegedly never "read" any of the cover letters, handbooks or arbitration policies distributed to her by Travelers repeatedly over a 10-year period, she did not know about the arbitration policy and did not agree to it. Notably, however, Plaintiff does not dispute having *received* each of the policies and related documents. (Denes Decl., para. 3., "I do not recall ever reading any of the documents.") In *Craig v. Brown & Root*, 84 Cal.App.4th 416 (2000), the court found a binding agreement to arbitrate based on remarkably similar facts. There, the employer adopted a mandatory arbitration policy and distributed it to employees by mail on two separate occasions. In a lawsuit that subsequently ensued between the plaintiff and the employer, the plaintiff, seeking to avoid arbitration, conveniently claimed not to have received the arbitration policies, thereby never agreeing to be bound by them. The court rejected plaintiff's contention and found that a binding agreement to arbitrate existed based on the employer's evidence that the policies were, in fact, sent to the plaintiff, and plaintiff accepted the policies by continuing to work for the employer for several years following receipt of the policies. *Id.* at 421-22.

Plaintiff does not, and cannot, meaningfully distinguish *Craig*. She attempts to minimize the holding of the case as a mere elucidation of the mail box rule that documents sent by U.S. mail and not returned are presumed to have been received. She tries to contrast the mail service in Craig

to Travelers service of its policies by interoffice mail, e-mail, and the company intranet by arguing that Travelers has not sufficiently explained how interoffice mail works or exactly who the emails were sent to. These arguments are devoid of merit and do not serve to distinguish the *Craig* case. The Diane Bengston Declaration makes clear that the policies, cover letters and emails were sent to "all employees," which includes Plaintiff, and Plaintiff does not deny having received the documents.

Additionally, it is worth noting that Plaintiff <u>admits</u> to having reviewed Travelers Code of Business Conduct and Ethics and agreeing to be bound by its terms. (Denes Decl., para. 4 and Exhs. A & B thereto.) That policy was posted on Travelers employee Intranet in 2005, as was the free-standing Arbitration Policy. When an employee like Plaintiff turned on her computer each day, the Intranet appeared as the home page and could not be bypassed. The home page provided links across the top and bottom of the page to "Your Employee Info" and "Employee Policies," including the Code of Business Conduct and Ethics and the Arbitration Policy. It defies logic and credibility that Plaintiff had knowledge of and read the Code of Business Conduct and Ethics, but not the Arbitration Policy, posted on the same site. Indeed, the Code of Business Conduct, which Plaintiff admits she electronically affirmed, specifically states that the employee's affirmance of the Code signifies that "you understand that the policies are available for review on STArt [the Company Intranet], that you have read and understand them and that you agree to comply with them." (Exh. A to Denes Decl., p.3, "Key Obligations, p. 10-11 "Employee Policies.") The Code even provides electronic a link to the Employee Policies Guide, which includes the arbitration policy. (Exh. A to Denes Decl., p.3, "Key Obligations.") Finally, the Affirmation Statement, which Plaintiff affirmed, states, "I have reviewed and understand the contents of The St. Paul Travelers Companies, Inc. Code of Business Conduct and Ethics and all policies referenced therein." (Exh. A to Denes Decl., p.13.) Plaintiff's affirmation refutes her contention in this case that she never read the arbitration policy.

This evidence should preclude a finding that Plaintiff never read or agreed to the arbitration policy. Plaintiff specifically agreed to be bound by Travelers employee policies, including the arbitration policy, by virtue of her affirmation of the Code of Business Conduct. (Exh. B to Denes

Decl.; Exh. A to Denes Decl., p.3, 10, 13.) When coupled with the following evidence establishing Plaintiff received numerous hard copies of the arbitration policy as well as freestanding letters alerting her to the fact that acceptance of the policy was a condition of continued employment, there can be no dispute that Plaintiff, like the plaintiff in *Craig v. Brown & Root*, agreed to the arbitration policy:

- When the arbitration policy was first implemented in 1994, Travelers sent a letter to all employees, including Plaintiff, explaining the adoption of the policy and specifying that at the policy was being distributed and further explained that arbitration was a "condition of employment" and that "the Company and you agree" that any issues not resolved by the internal dispute resolution procedure "will be submitted to binding arbitration." Finally, the letter emphasized, "Arbitration is an essential element of your employment relationship and a condition of employment." (Exh. A to Bengston Decl.)

- In 1996, Travelers again sent a letter to all employees, including Plaintiff, reminding them of the arbitration policy in the handbook and advising them to review it carefully. (Exh. C to Bengston Decl.)

- In 1998, Travelers sent yet another letter to all employees, including Plaintiff, calling her attention to the arbitration policy in the employee handbook. (Exh. E to Bengston Decl.)

- In each of the years 2002, 2003 and 2004, Travelers issued revised handbooks to all employees, including Plaintiff, prominently reminding employees of the arbitration policy at the beginning of the handbook: "IMPORTANT. THIS HANDBOOK CONTAINS A PROVISION WHICH REQUIRES YOU TO SUBMIT EMPLOYMENT RELATED DISPUTES TO BINDING ARBITRATION. PLEASE READ IT CAREFULLY. NO OTHER PROVISION IN THIS HANDBOOK IS INTENDED TO CONSTITUTE A WAIVER, NOR SHOULD BE CONSTRUED TO CONSTITUTE A WAIVER, OF THE COMPANY'S RIGHT TO COMPEL ARBITRATION OF EMPLOYMENT-RELATED DISPUTES."

(Exhs. G, H, I to Bengston Decl.)

- In 2004, following the merger of Travelers and The St. Paul Companies, the company sent an email to all employees, including Plaintiff, specifically notifying employees that the arbitration policy would remain in effect for legacy Travelers employees (such as Plaintiff) and that, "Your agreement to abide by all of these policies is an **express condition of your continued employment** with the St. Paul Travelers Companies." (Exh. J to Bengston Decl., emphasis added.)

- In addition to the foregoing, each of the arbitration policies attached as appendices to Travelers employees handbooks in 1994, 1996, 1998, 2001, 2002, 2003, and 2004 made clear that "arbitration [is] the required and exclusive forum for resolution of all employment-related disputes. . . ." (Exhs. B, C, D, E, F, G, H, I to Bengston Decl.)

- The 2005 arbitration policy, which was posted as a stand-alone policy on the company Intranet and linked to each employee's home page on their computers, similarly provides that "arbitration [is] the required and exclusive forum for resolution of all employment-related disputes. . . ." (Exh. J to Bengston Decl.)

The foregoing establishes that Plaintiff was repeatedly informed of Travelers mandatory arbitration policy and that acceptance of the policy was an express condition of her continued employment. As in *Craig v. Brown & Root*, Plaintiff's denial of having "read" the policies is insufficient to escape the binding effect of the policies. Plaintiff's continued employment throughout 11 years of notifications about the arbitration policy, as well as her express affirmation of Travelers Code of Business Conduct and the policies referenced therein, constitute her acceptance of the arbitration policy.

III. **The Arbitration Agreement Is Not Unconscionable.**

As explained in Travelers moving papers, an arbitration agreement must be both procedurally *and* substantively unconscionable in order to be unenforceable. Therefore, even if the arbitration policy is deemed procedurally unconscionable by virtue of Plaintiff's acceptance being required as a condition of employment, the agreement still must be enforced if it is not ALSO

determined to be substantively unconscionable--*i.e.* having terms "so one-sided as to shock the conscience." *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal.App.4th 1105, 1125 (1999). Plaintiff argues that the arbitration agreement is substantively unconscionable for four reasons: (1) it limits discovery; (2) it allegedly imposes unreasonable forum costs on the employee; (3) it allegedly is not a mutual agreement to arbitrate; and (4) Travelers retained the right to modify the arbitration policy. Plaintiff's points are not well taken.

### A. Discovery Is Not Unfairly Limited.

In *Armendariz v. Foundation Health Psychcare Serv., Inc.*, 24 Cal.4th 83 (2000), the Court held that "adequate discovery" must be permitted in arbitrations involving statutory rights. However, the Court explained that adequate discovery does not mean unfettered discovery and that the need for discovery must be balanced against the need for simplicity in arbitration. As a result, the Court indicated that an arbitration agreement validly may provide for "something less than the full panoply of discovery" available in court proceedings. Travelers arbitration policy provides for sufficient discovery, mutually providing the parties one set of interrogatories and one set of requests for production of documents, AND allowing the arbitrator discretion to permit any additional discovery requested by a party in accordance with AAA Rules. (Exh. J to Bengston Decl.)

In *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 183-84 (2002), a case repeatedly cited by Plaintiff, the court held that a discovery provision very similar to the one in Travelers policy was not unconscionable. The provision at issue in *Mercuro* provided the parties with 30 discovery requests, inclusive of subparts, and including a maximum of three depositions. However, the agreement further stated that the arbitrator, "considering a presumption against increasing the aggregate limit on requests," had discretion to grant additional discovery on a showing of good cause. *Id.* at 182. In assessing whether this provision was an unconscionable restriction on discovery, the court reasoned: "While the amount of discovery permitted under the arbitration agreement appears inconsistent with the general discovery practice in employment litigation, the limits are applicable to both employer and employee so at least they have the virtue of mutuality. Furthermore, the 30 discovery requests limit may work to the employee's advantage by preventing

the employer from burying the employee under a mountain of discovery. We also note the discovery limits can be extended by the arbitrator for good cause." *Id.* at 183. The court went on to hold: "Finally, we note 'adequate discovery' does not mean unfettered discovery and *Armendariz* itself recognizes an arbitration agreement may require something less than the full panoply of discovery provided in [the Code of Civil Procedure]. Ultimately, it is up to the arbitrator and the reviewing court to balance the need for simplicity in arbitration with the discovery needs of the parties. For the reasons given above, we are unable to say the Countrywide arbitration agreement does not provide adequate discovery rights to employees seeking to vindicate statutory rights as required under *Armendariz*." *Id.* at 184.

Just as the discovery provision at issue in *Mercuro* was deemed sufficient to satisfy *Armendariz*, the discovery provision at issue in this case similarly satisfies *Armendariz* by allowing both parties the right to one set of interrogatories and one set of requests for production in accordance with the Federal Rules of Civil Procedure. The Federal Rules allow for 35 interrogatories and unlimited requests for production of documents. This is far more discovery than the 30 request limit upheld in *Mercuro*. In addition, the Travelers policy also provides the arbitrator discretion to grant any additional discovery in accordance with AAA Rules (specifying that the arbitrator may order any discovery necessary for a full and fair exploration of the issues in dispute). Notably, the Travelers policy does not impose any limitation on the arbitrator's discretion, as did the policy at issue in *Mercuro* (providing that although the arbitrator has discretion to grant further discovery, the arbitrator must consider a "presumption" against increasing discovery). Thus, the discovery provision in Travelers policy is not substantively unconscionable.

*Fitz v. NCR Corporation*, 118 Cal.App.4th 702 (2004), also relied upon by Plaintiff, does not compel a different result. In *Fitz*, the court found a discovery provision limiting the parties to two depositions and no written discovery, unconscionable. Although the provision reserved some discretion for the arbitrator to grant additional discovery, the provision stated that the arbitrator's discretion was contingent on the parties' ability to prove that a fair hearing would be "*impossible*" without additional discovery. *Id.* at 716. Based on this "impossibility" constraint imposed on the

1  arbitrator's discretion by virtue of the arbitration agreement, the court found that the discovery
2  provision was substantively unconscionable. *Id.* at 717.

3        Unlike the discovery provisions in *Fitz* and in *Mercuro*, the Travelers policy does not
4  impose *any* constraint on the arbitrator's discretion to grant additional discovery beyond that
5  specified in the arbitration policy. As a result, the discovery provision provides for adequate
6  discovery and is not substantively unconscionable. This conclusion is wholly consistent with
7  *Armendariz'* recognition that "a limitation on discovery is one important component of the
8  'simplicity, informality, and expedition of arbitration.'" *Armendariz*, 24 Cal.4th at 106 n.11.
9  Balancing this interest against the need for adequate enforcement of statutory rights, the
10 *Armendariz* Court held that employees are "entitled to discovery sufficient to adequately arbitrate
11 their statutory claim, including access to essential documents and witnesses, ***as determined by the***
12 ***arbitrator(s)*** . . . ." *Id.* (emphasis added.) Thus, *Armendariz* sanctioned arbitrator discretion to
13 determine the appropriate scope of discovery. *See also Lagatree*, 74 Cal.App.4th at 1131 n.21
14 (specifically finding that the AAA rule governing discovery [providing that the arbitrator shall have
15 the authority to order any discovery the arbitrator considers necessary to a full and fair exploration
16 of the issues in dispute] is fair to claimants.)

17      **B.**    <u>The Arbitration Policy Does Not Impose Impermissible Costs on the Employee.</u>

18       Travelers arbitration policy provides that arbitration proceedings generally will not be
19 stenographically recorded but that if either party wants a recording, that party shall bear the cost of
20 the court reporter and if both parties want the proceeding recording the cost will be equally borne
21 by the parties. (Exh. K to Bengston Decl.) Plaintiff argues that this provision is substantively
22 unconscionable because it requires Plaintiff potentially to bear costs she would not bear in court.
23 This same argument was considered and twice rejected by this Court in *Luafau v. Affiliated*
24 *Computer Serv., Inc.*, 2006 WL 1320472 at *7 (N.D. Cal. 2006) and *Farac v. Permanente Medical*
25 *Group*, 186 F. Supp. 2d 1042, 1047 (N.D. Cal. 2002). In *Farac*, the Court considered a provision
26 virtually identical to the stenographic record provision in the Travelers policy, providing that either
27 party may arrange for a court reporter at their own expense (or jointly, if agreed). Holding that this
28 provision was not unconscionable, the Court reasoned, "Again, this provision is perfectly bilateral,

and accordingly not suspect as oppressive. Furthermore, parties bear the cost of producing a transcript on appeal in a judicial forum as well. Imposing a similar cost in an arbitration agreement is permissible." *Id.*

As these authorities makes clear, the stenographic record provision in Travelers arbitration policy is not unconscionable. Plaintiff's argument that it imposes costs on Plaintiff that effectively preclude appeal, is unavailing. Plaintiff would bear the cost of producing a record on appeal even if the matter were litigated in court as opposed to arbitration. As a result, this provision does not impose unreasonable or impermissible costs on the employee.

### C. The Arbitration Policy Clearly Imposes a Mutual Obligation to Arbitrate.

Plaintiff argues that Travelers arbitration policy imposes a unilateral obligation to arbitrate on the part of employees, but not on the part of Travelers. Plaintiff relies on language in the Scope of Policy section, stating that, "Nothing in this Policy shall prevent *either party* from seeking injunctive relief from any court of competent jurisdiction in aid of arbitration or on the ground that the award to which the applicant for such relief may be entitled may be rendered ineffectual without such relief, such as injunctive relief intended to redress a violation of a restrictive covenant." (Exh. K to Bengston Decl., emphasis added.)  While it is true that courts have found truly <u>unilateral</u> arbitration agreements substantively unconscionable, Travelers policy is *not* unilateral and, therefore, these authorities do not apply. Travelers policy merely reinforces principles of law, such as Code of Civil Procedure section 1281.8, which make clear that a party to an arbitration agreement may seek provisional relief (e.g. preliminary injunctions and temporary restraining orders) in court if the award to which the applicant may be entitled may be rendered ineffectual without such relief. Notably, the provision makes clear that it applies to injunctive relief sought by <u>either party</u> in aid of arbitration and is, thereby, bilateral. The policy also makes clear that "arbitration is the required and exclusive forum for the resolution of ALL employment-related disputes based on legally protected rights (i.e. statutory, contractual or common law rights) that may arise between an employee or former employee and the Company." (Exh. K to Bengston Decl.) Moreover, the following provision in each of Travelers 2001, 2002, 2003, 2004 and 2005 policies should eliminate any doubt as to whether the policy imposes a bilateral agreement to

arbitrate: "Nothing in this provision shall be construed to negate the mutuality of this agreement to arbitrate, and the Company explicitly agrees to arbitrate, pursuant to this Policy, any disputed disciplinary action after it has been taken." (Exhs. F, G, H, I, K to Bengston Decl.)

Because Travelers arbitration policy imposes a mutual requirement to arbitrate disputes, it cannot be deemed substantively unconscionable for lack of mutuality, contrary to Plaintiff's contention.

### D. Travelers Right to Modify the Arbitration Policy Does Not Render the Policy Substantively Unconscionable.

Plaintiff argues that Travelers unilateral right to modify and/or eliminate its arbitration policy is substantively unconscionable, relying on *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003). Although the *Ingle* case makes this finding regarding a similar provision in Circuit City's arbitration policy, the court makes clear that, "We draw no conclusion as to whether this term, by itself, renders the contract unenforceable." *Id.* at 1179 n.23. The Ingle court further noted that the Sixth Circuit, in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667-78 (6th Cir. 2003), independently held that Circuit City's ability to modify or terminate its arbitration agreement did not, by itself, render the contract unenforceable.

Moreover, the reasoning underlying the *Ingle* court's determination that the modification provision is unconscionable, is questionable. It is well-established in California that an employer can unilaterally adopt a binding arbitration policy and make employees' acceptance of that agreement a condition of employment. See *Lagatree, supra*, 74 Cal.App.4th 1105; *Craig, supra*, 84 Cal.App.4th 416; *24 Hour Fitness v. Superior Court*, 66 Cal.App.4th 1199 (1998). Furthermore, it is established that continued employment after notification of an employer's unilateral modification of employment policies, constitutes acceptance of those benefits. *Asmus v. Pacific Bell*, 23 Cal.4th 1, 11 (2000).[3] These established principles beg the question why the result should be any different as to an employer's ability to modify a unilaterally adopted arbitration policy. Here, Travelers policy provides for modification only on 30 days notice to employees, and

---

[3] Plaintiff mistakenly argues that the *Asmus* case is unpublished and suggests that Travelers improperly cites to it. The *Asmus* case is not unpublished; it is a published California Supreme Court opinion.

there is absolutely no evidence to suggest that the modification provision has been used to thwart an employee's effort to arbitrate a dispute. Indeed, review of Travelers arbitration policies between 1994 and 2005 reveals that most modifications have been aimed at complying with evolving law regarding the *Armendariz* factors designed to ensure the *fairness to employees* of the arbitration procedure for statutory claims.

In any event, as Plaintiff aptly emphasizes in her opposition, state law contract principles govern in determining whether the arbitration agreement is enforceable in this case. (Pl. Opposition, p. 14, lines 10-15.) In *24 Hour Fitness v. Superior Court*, 66 Cal.App.4th 1199, the California Court of Appeal relied on state contract law principles in holding that a similar provision allowing the employer to unilaterally modify its arbitration policy without *any* advance notice, did not render the contract uneforceable: "'[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings. Nautilus' discretionary power to modify the terms of the personnel handbook in writing notice indisputably carries with it the duty to exercise that right fairly and in good faith." *Id.* at 1214 (internal citations omitted.) Based on this interpretation, the court held that the modification provision did not render the contract illusory or unenforceable. *Id.*

Based on the foregoing, Travelers ability to unilaterally modify its arbitration policy should not be deemed substantively unconscionable.

E. **Even if the Court Determines That One or More Provisions of the Arbitration Policy Are Unconscionable, the Offending Provisions Should Merely Be Severed from the Agreement.**

In *Armendariz*, the California Supreme Court explained that a court has discretion to sever and/or limit unconscionable provisions in an arbitration agreement, and still enforce the remainder of the agreement. *Armendariz*, 24 Cal.4th at 122. Severing the unlawful terms may be used to conserve an otherwise lawful contract. *Id.* at 124. "The overarching inquiry is whether "the interests of justice would be furthered by severance." *Id.* (internal citation omitted.) As a general rule, "if the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." However, "if the illegality is collateral to the main purpose of the contract,

and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance or restriction are appropriate." *Id.*

As explained above, Travelers does not believe that any of the provisions of its arbitration policy at issue in this case are substantively unconscionable, much less that the agreement as a whole can be considered "permeated" with unconscionability so as to justify a finding that the entire agreement is unenforceable. *Armendariz*, 23 Cal.4th at 122. If the Court, however, determines that one or more of the provisions is unconscionable, Travelers submits that the provision should simply be severed and/or restricted to preserve enforceability of the remainder of the arbitration agreement. Such a result is consistent with, and furthers, the FAA's well-established policy favoring arbitration as a means of dispute resolution. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984.)

## IV. Plaintiff's Unfair Competition Claim Does Not Preclude an Order Compelling Arbitration of This Dispute.

Plaintiff argues that because she alleges an unfair competition (UCL) claim seeking, among other things, an injunction to prevent alleged ongoing harm to the public, arbitration should not be compelled. While some California courts have held that arbitration is inappropriate for claims for public injunctive relief under the UCL, these cases are distinguishable from the present dispute in that the present dispute truly is an individual dispute seeking personal damages for alleged age discrimination. The action is brought in Plaintiff's individual capacity, not on behalf of the general public. In any event, if the Complaint is construed as stating a valid claim for public injunctive relief under the UCL, this still does not impact the Court's ability to compel arbitration of this dispute. Instead, the proper procedure is for the Court to sever the claim for injunctive relief, refer the remaining arbitrable claims to arbitration, and stay the court proceedings (and litigation of the claim for injunctive relief) pending completion of arbitration. *See Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 553 (2005) (holding that trial court erred in ordering entire dispute to be litigated in court); *Groom v. Health Net*, 82 Cal.App.4th 1189, 1199 (2000).

V. **Conclusion**

Based on the foregoing, Defendants' motion to compel arbitration should be granted.

Dated: December 27, 2007            CARLTON DiSANTE & FREUDENBERGER LLP

By: /s/ Robin E. Weideman
Robin E. Weideman
Attorneys for Defendants
TRAVELERS INDEMNITY COMPANY and
YVONNE GARRISON